# Richards et al. *versus* McGrath.

1. Trespass vi et armis, de bonis asportatis, does not lie by a tenant against a landlord for distraining for more rent than is due.

2. After a distress has been lawfully made, the landlord may commit an act in itself a trespass, and thereby become a trespasser ab initio.

3. Where a sale of goods under a distress for rent has been commenced and the tenant tenders the landlord the difference between the amount realized by the sale and the full amount of rent claimed, with costs, the refusal of the tender and the continuance of the sale renders the landlord liable, in an action of trespass, for the value of the goods afterwards sold, notwithstanding the proceedings before the tender were legal and regular.

4. The object of the Act of 21st March 1772, is to enable a landlord to collect his rent; and a tenant ought to be permitted to pay the sum due the landlord, with costs, at any time, with the same effect as if the money were made by the sale of his goods.

5. If the proceedings and sale under a distress for rent are lawful, the

| 100 | 389 |
| 168 | 196 |
| 100 | 389 |
| 21 SC | 638 |
| 21 SC | 639 |

[Richards *v.* McGrath.]

purpose of the landlord is immaterial; only in case of an invalid sale would the purpose be pertinent with reference to damages.

6. In making an inventory, a landlord is not required to weigh or measure all the goods in a store, which he has distrained upon. The inventory should be sufficiently full to inform the tenant of the goods distrained, for which he may issue a writ of replevin.

7. In an action of trespass against a landlord for distraining for more rent than was due, the court below charged, inter alia, that a landlord " has no right to issue a warrant for more than the rent due. He has no right to issue a warrant if there is no rent due. If he does, then by a section of this act he becomes liable to pay double the damages or value of the goods distrained, and under the decisions of the court he is a trespasser ab initio " . . . . . " the first question for the jury to determine is—was the warrant issued for the amount of rent due, and was there an appraisement and notice given as required by law. . . . . . A landlord is liable for an action if he distrains for more rent than is due, without proof of malice or want of probable cause . . . . . We think the landlord had no legal right to distrain for more rent than was due." *Held*, to be error.

April 21st 1882. Before Mercur, Gordon, Trunkey, Sterrett and Green, JJ. Sharswood, C. J., and Paxson, J., absent.

Writs of error to the court of Common Pleas of *Schuylkill county:* Of January Term 1882, Nos. 216 and 217.

Two actions of trespass vi et armis, de bonis asportatis, brought respectively by Dennis McGrath and Catharine McGrath, against Wm. T. Richards, Constable, Malachi Watson, surety on his bond, and Michael Monahan, landlord—to recover damages for forcible entry on plaintiffs' premises and carrying away their personal property. Plea, in each case, not guilty.

The cases were tried together, before Walker, J., when the evidence showed the following facts:—On May 15th 1876 Michael Monahan leased to Dennis McGrath, a store and dwelling in Shenandoah city, Schuylkill county, for the term of one year, at $25.00 per month. The lease contained the usual covenants for payment of rent and waiver of exemption law, and provided that the goods on the demised premises should be subject to distress for rent, and further that by holding over beyond the term, the lease should be considered in force for another year. McGrath took possession of the house, and his daughter occupied the store as a milliner. After the second month the rent was not regularly paid, and on April 26th 1877 Monahan issued a landlord's warrant directed to William T. Richards, a constable of Shenandoah, authorizing him to collect by distress, of the goods and chattels of McGrath the sum of $100, claimed to be due for rent since November 15th 1876.

The plaintiffs contended that this was in excess of the

[Richards *v.* McGrath.]

amount really due and introduced evidence to show that Mrs. Monahan owed Catharine McGrath $20.80 for goods bought from the store since November 15th 1876, which had been acknowledged by Mrs. Monahan; also that in August 1876 Monahan had promised Mrs. McGrath, that he would reduce the rent to $20.00 per month, and that afterwards Mrs. Monahan promised to reduce it to $18.00. As to this Mrs. McGrath testified, that Monahan came to her and " said $20.00 per month and said he would send his wife to finish the agreement, and the week after, Mrs. Monahan came and said $18.00 per month, and I agreed with her for $18.00 per month."

Plaintiff's witnesses further testified, that Richards, acting under the said landlord's warrant, levied on all the furniture in the house, and goods in the store, including bonnets left with Catharine McGrath to be done up, and on a sewing machine left with her by the company to sell; that at the sale under said warrant, things were sold in the lump (as they had been appraised), by the drawer full and box full, thereby bringing much less than they were worth; that the sewing machine which was worth $65.00 was sold to Monahan for $17.00, and bonnets belonging to Catharine's customers, were sold in spite of her remonstrances; that after selling $47.94 worth on the first day, the sale was adjourned several days, and when it had been in progress for some time on the second day, Mr. Hollopeter, as attorney for the McGraths, asked Richards to give him the amount of Monahan's claim. Richards said the original claim with costs amounted to $117.00 and that the sales up to that time amounted to $82.79 (in which amount was included the $17.00 for which plaintiffs claimed the sewing machine was sold to Monahan) thus leaving $34.21 still due Monahan; that Hollopeter then offered Richards and Haughawant, Monahan's attorney, $34.25 in legal tender notes, as settlement in full, which they refused to accept; that after this refusal Hollopeter was asked to take back the sewing machine at $17.00, which he refused to do, and Richards was then directed by the defendants to go on with the sale, which he did.

The defendants offered in evidence the lease, the landlord's warrant dated April 26th 1877, a notice of distress served April 27th 1877 on McGrath, an inventory and appraisement of the goods made May 3d 1877, and the return of the constable indorsed on the warrant, that he had sold goods to the amount of $96.97 exclusive of costs.

The defendant's witnesses testified, inter alia, that the whole amount of the two days' sale was $82.66, which did not include the $17.00 for the sewing machine; that Catharine McGrath when asked by Richards what articles belonged to her customers

[Richards *v.* McGrath.]

refused to tell; that Monahan did not buy the sewing machine but returned it to the company; that he did not see any tender of money made by Hollopeter; that a fair and just appraisement had been made of the goods, which were of a poor quality and not valuable. Mrs. Monahan testified that the McGraths had paid their rent in full to November 15th 1876; and that the articles she bought from Catharine McGrath were bought in October 1876 and paid for, and should not be deducted from the rent claimed in the warrant. She further testified that her husband agreed to reduce the rent to $20.00 per month, and that she afterwards reduced it to $18.00 without his knowledge.

The court charged the jury, inter alia, as follows: The 14th section of the act of 21st of March 1772 gives a landlord a right to distrain for rent; another section provides for the appraisement of the goods if they are not replevied and a bond given within five days.

[A landlord then, if he has a lease and there is rent in arrear has a right to issue a landlord's warrant. He has no right to issue a warrant for more than the rent. He has no right to issue a warrant if there is no rent due. If he does, then by a section of this act, he becomes liable to pay double the damages or value of the goods distrained, and under the decisions of the courts he is a trespasser ab initio: 6 S. & R. 288; Pur. Dig. 879 pl. 12.] (First assignment of error.)

[There are facts in this case which must be left to the jury to decide under the law as we shall lay it down. The first question for the jury to determine is, was the warrant issued for the amount of rent due and was there an appraisement made and notice given as required by law: Kerr *v.* Sharp, 14 S. & R. 499. The Act of Assembly requires five day's notice of the distress to be given to enable the tenant to replevy the goods if he desires; and on failure to give five days' notice the landlord would become a trespasser: Brisben *v.* Wilson, 10 P. F. S. 452.] (Second assignment of error.)

[A landlord is liable in an action if he distrains for more rent than is due, without proof of malice or want of probable cause: McElroy *v.* Dice, 5 H. 163. These facts the jury must determine. Michael Monahan claims rent amounting to $100. He says he reduced the rent from $25 a month to $20. His wife says she reduced it to $18 without the knowledge of her husband. If she acted for him, and by his authority, then he would be bound by her acts, and the rent must be calculated upon that basis. As a defence to this amount of rent, Miss McGrath claims a store bill of $21.81 which was disputed, and in a suit brought to recover this bill the arbitrators awarded no cause of action.] (Third assignment of error.)

The next question is, did the plaintiffs through their attor-

[Richards *v.* McGrath.]

ney, Mr. Hollopeter, make a tender of the balance of the rent due to Monahan with legal costs? [The counsel for the defendants asks the court to say that a tender made after a day's sale, before the whole is completed, would not be effectual in preventing the constable in proceeding, that a constable may go on and collect the rent even though the amount is tendered. We think a man may distrain for the amount of his rent that is due, and go on and sell for the first day, and collect, we will say half the amount. Then if the tenant comes forward and tenders the balance, he must take it, or rather he can sell no more goods. Of course the issuing of the warrant, the notice, the appraisement and all that, would be perfectly legal up to that time, and he could not be considered a trespasser ab initio. He would be collecting his due, which right the Act of Assembly gives him and he would have a right to go on and sell unless the amount of rent and costs was tendered to him. This decision reads: " A personal tender before distress makes it tortious, and such tender afterwards and before impounding makes the detainer unlawful, and tender after impounding makes neither one nor the other unlawful." (Hunter *v.* Le Conte, 6 Cowen 728.) I think the tender after the issuing of the warrant, the notice and appraisement, would not make it unlawful, but the question would be as to any act done after that. The landlord could not become a trespasser ab initio, that is from the beginning; but if he was obliged by law to accept it, he could only be responsible from that time out.

Was this tender of the balance and lawful costs made by the plaintiff? . . . If then the tender was made for the balance of the rent and lawful costs the constable should have accepted it. We cannot say he was bound to accept it, but he should have accepted it. If he proceeded to sell goods afterwards, he would be liable for the value of such goods afterwards sold, notwithstanding the original proceedings were legal and regular. If you find these facts, to wit: That the tender was made for the full amount and was refused, then the measure of damages would be the actual value of the property sold after the tender, if done by a mere mistake or misconception. But if done wantonly to the injury of the plaintiff he would be liable for exemplary damages, and your verdict should be accordingly.] (Fourth assignment for error.) If on the contrary you find that everything was done legally and in pursuance of the Act of Assembly, and that the tender was not made for a sufficient amount to pay the rent and costs, then your verdict should be for the defendants. . . .

The defendants presented the following points:—

1. If the jury believe that there was rent due from McGrath to Monahan, he had a right to issue a warrant and distrain any of the goods on the rented premises, to pay the same, and after

[Richards *v.* McGrath.]

notice of such distress and appraisement and advertisement sell the same in satisfaction of the rent due. Answer. This is affirmed.

2. That if the jury believe that the constable gave notice at the sale to Catharine McGrath to inform him (the constable) of ·any goods or wearing apparel belonging to other persons, and that she refused to do so, but told him to sell, then she cannot claim for any goods and wearing apparel of other persons or herself, sold at said sale. Answer. This is affirmed.

3. That the goods of Catharine McGrath on the leased premises, were liable to be distrained and sold for rent due by her father, and it is of no consequence to her, whether the distress was for all or more than the rent due. Answer. We think the landlord had no legal right to distress for more rent than is due him. (Fifth assignment of error.)

4. That the return of the constable shows that he proceeded according to law in distraining and selling the goods,· and his return of such proceeding in this action is conclusive upon the parties to this suit. Answer. We decline to instruct you as prayed for in this point.

5. That a sale in lots of goods is not illegal, and especially is such the case where it is not shown that they would have brought a better price if sold separately and by separate items. Answer. This is affirmed.

6. That a tender on the same day of sale and after one day of sale had elapsed, is of no consequence in the case and would not render a subsequent sale of goods to satisfy the rent illegal; if the jury therefore believe that the defendant proceeded to sell and satisfy the rent after the offer of money by Hollopeter he had a 'right to do so, and his act would be lawful. Answer. We decline to instruct you as requested. (Sixth assignment of error.)

The plaintiff presented the following points.

·1. Mr. Monahan, as landlord, had no right to levy on plaintiff's goods for rent not due, and that if Monahan either authorized his wife to reduce the rent to $18 a month, or ratified her act in doing so and then a settlement was made, based on such reduced rent Monahan, is bound by it.

Answer. We have said in our general charge that a husband may authorize his wife to act for him. We affirm this. . . . . The jury will take all the evidence into consideration. (Seventh assignment for error.)

2. That if the jury believe that Monahan and Richards and Watson had the purpose to sell out all the property of the plaintiffs without regard to whether the sum paid the rent or not, and in pursuance of that purpose levied on their property respectively, and failed to furnish a full and complete inventory

of the goods levied upon, and to appraise the same, but levied on divers separate and distinct articles susceptible of weight and measurement, in the lump or by the shelf, and so appraised and sold the same at a wanton and gross sacrifice, such acts of the defendants made them trespassers ab initio, or from the beginning—rendered them liable, not only for the value of the goods so taken and disposed of, but for exemplary damages. Answer. We affirm it. (Eighth assignment of error.)

3. That if the defendant sold the goods of the plaintiffs, respectively, after a tender of the full amount of the rent due, they were trespassers for so doing, and liable for exemplary damages.

Answer. This would depend upon the facts. If done wantonly to injure the plaintiff then we affirm it. If done by mistake or inadvertence, they would not be liable for exemplary damages. (Ninth assignment of error.)

4. That the defendant Monahan and the constable, having levied upon and sold the sewing machine and then Monahan bought it in, he could not take advantage of his own wrong, by refusing to credit the amount for which it was sold.

Answer. He could not take advantage of his own wrong. But if he committed a mere mistake, he might correct it within a reasonable time. (Tenth assignment for error.)

5. That if the defendants sold the goods of the plaintiffs respectively for more rent than they claimed, and was due, and legal costs, then they were trespassers in so doing, and liable for exemplary damages, as well as the value of the property so sold.

Answer. If it was done wantonly to injure the plaintiffs then we affirm it. If it was done by an oversight, then it would not be a case for exemplary damages. (Eleventh assignment of error.)

Verdict, for Dennis McGrath, for $150, without interest, and $50, exemplary damages.

Verdict, for Catharine McGrath, for $400, the value of the stock, $105, interest, and $50 exemplary damages. Judgments were entered accordingly. Whereupon the defendants took these writs, assigning for error those portions of the charge of the court below enclosed in brackets, and the answer to plaintiffs' and defendants' points as above.

*John W. Ryon* and *L. D. Haughawont* for plaintiffs in error.—It is well settled in this state that an action of trespass will not lie against a landlord for distraining more rent than is due: McKinney v. Reader, 6 Watts 34. The proper remedy is an action on the case: Karns v. McKinney, 74 Pa. St. 387. Whatever was said by the court as to the liability of the defendants was no doubt understood by the jury to refer to this case, in

[Richards *v.* McGrath.]

which the form of action is trespass. But it is not contended that no rent was due, but simply that $100 was not due. The court made no legal difference between a distress for more rent than was due, and one where none is due.

A tender of payment does not render a sale of goods thereafter wrongful and the parties trespassers. A tender before distress makes the distress tortious, a tender after distress and before impounding makes the detainer, not the taking, unlawful. Therefore, a tender after the goods have been offered for sale, does not make the taking and detainer unlawful: Ellis *v.* Taylor, 8 M. & W. 415; Ladd *v.* Thomas, 12 Ad. & E. 117; Johnson *v.* Upham, 5 Jurist N. S. 681; Hunter *v.* Le Conte, 6 Cowen 728.

*S. G. M. Hollopeter* and *Hughes & Farquhar*, for defendants in error.—It is illegal to distrain for more rent than is due, and an action will lie against a landlord and constable therefor: McKinney *v.* Reader, 6 Watts 41; Smith *v.* Meanor, 16 S. & R. 377; Wells *v.* Hirnish, 3 P. & W. 30; Bantleon *v.* Smith, 2 Binn. 153; McElroy *v.* Dice, 5 Harris 163. Under the statute of Marlbridge persons taking unreasonable distresses shall be grievously amerced. It follows, therefore, that it was not error for the court to say that " a landlord has no right to issue a landlord's warrant for more than the rent due." Although the statute of Marlbridge provides a remedy for taking an excess of rent, yet neither that statute nor the Act 21st March 1772, takes away the plaintiff's right to bring trespass for the abuse of a landlord's power by doing wanton injury to the plaintiff's property: Rees *v.* Emerick, 6 S. & R. 286; O'Donnel *v.* Seybert, 13 S. & R. 56; McDowell *v.* Shotwell, 2 Wharton 26. The Act of 1772 gives the right, to any owner of goods and chattels when they are distrained upon for rent and no rent is due, to bring an action of trespass or on the case to recover double the value of his goods distrained and sold. The court therefore did not err in saying a landlord " has no right to issue a warrant if there is no rent due. If he does . . . he is a trespasser ab initio." Trespass is the proper form of action for continuing on plaintiff's premises and keeping possession of goods distrained, after the distress has ceased to be lawful. Ladd *v.* Thomas, 12 Ad. & El. 117; therefore after tender in this case every act of the defendants was a trespass. The tenant even during the sale has a right to pay the full amount of his rent and costs, and prevent further sale and sacrifice of his goods. Ladd *v.* Thomas, supra, and Ellis *v.* Taylor, 8 M. & W. 414, were overruled as to this point by Johnson *v.* Upham, 2 Ellis & Ellis 263. Every act of the constable in selling after tender of rent and costs is a trespass: Taylor on Landlord and Tenant, § 736.

[Richards *v.* McGrath.]

Mr. Justice TRUNKEY delivered the opinion of the court (as to both cases), October 2d 1882.

Section 1 of the Act of March 21st 1772, recites the defect previously existing in the law for collecting rent and provides the remedy : " Whereas the most ordinary and ready way for recovery of arrears of rent is by distress, and no provision hath yet been made by the laws of this province that such distress may be sold, and by the common law the same may be only detained as pledges for enforcing the payment of such rent, and the persons distraining have little benefit thereby ; for the remedying whereof, *Be it enacted*, That when any goods or chattels shall be distrained for rent, and the tenant or owner of the goods shall not within five days next after such distress taken and notice thereof, replevy the same, the person distraining shall and may, with the sheriff, under sheriff, or any constable in the city or county where such distress shall be taken, cause the goods and chattels so distrained, to be appraised ; and after such appraisement, shall or may, after six days' public notice, sell the said goods and chattels for the best price that can be obtained, for and towards satisfaction of the rent, and charges of such distress, appraisment and sale, leaving the overplus, if any, in the hands of the officer for the owner.

The third section provides that in case any distress and sale shall be made for rent pretended to be in arrear and due, when there is none, then the owner of the goods and chattels distrained and sold, shall and may, by action of trespass, or upon the case, recover double the value of the same from the person who made the distress.

A distress for more rent than is due, or an excessive distress, should not be confounded with a distress where no rent is in arrear and due. In the latter case, although the person distraining is liable for double the value of the goods, the injured party may elect to bring an action at common law, and, if the circumstances warrant, recover exemplary damages exceeding the amount of the statutory penalty : Rees *v.* Emerick, 6 S. & R. 286. Making the distress, when the claim is wholly false, is a mere trespass. But when the landlord distrains for more rent than is due, or makes an excessive distress, he " shall be grievously amerced for the excess of such distress." He is liable to an action for distraining for more rent than is due : McElroy *v.* Dice, 17 Pa. St. 163. Trespass will not lie : McKinney *v.* Reader, 6 Watts 34. Case lies, though the goods distrained were of less value than the rent really due, for the defendant's wrongful act was a legal cause of action, and if the plaintiff suffered no actual damage he may recover nominal : Taylor *v.* Henniker, 12 Ad. & El. 488.

The plaintiffs below in these actions, urging that the court

[Richards *v.* McGrath.]

did not rule that they were entitled to recover in trespass for an
excessive distress, or for distraining for more rent than was due,
adopt the opinion of the learned judge of the common pleas
upon the motion for new trial as part of their argument. In
that, it is shown that trespass will not lie for such wrong, but
the judge thought he had properly instructed the jury. The
charge related to the cases on trial, the jury ought to have acted
upon it and probably did, for they were bound to take the law
from the court. They were told that a landlord "has no right
to issue a landlord's warrant for more than the rent. He has
no right to issue a warrant if there is no rent due. If he does,
then by a section of this act he becomes liable to pay double
the damages or value of the goods distrained and under the
decision of the courts he is a trespasser ab initio." It
is unlikely that the jury thought that remark had no relation to
the question before them, or that they saw the distinction
between the case of a warrant for more than the rent, and of a
warrant when there was no rent at all. But its application to
the cases on trial was enforced by further saying, "The first
question for the jury to determine is, was the warrant issued for
the amount of rent due and was there an appraisement made and
notice given as required by law?" . . . . "A landlord is liable
to an action if he distrains for more rent than is due, without
proof of malice or want of probable cause." And their attention
was directed to the testimony respecting the amount of the rent.
The plaintiff's first point was affirmed, in which it is asserted that
Monahan had no right to levy on the plaintiffs' goods for rent
not due. And the defendants' third point, "That the goods of
Catharine McGrath on the leased premises were liable to be
distrained and sold for the rent due by her father and it is of no
consequence to her whether the distress was for all or more than
the rent due;" was answered thus: "We think the landlord had
no legal right to distress for more rent than was due." What-
ever the court intended, there can be no doubt that the jury
understood, that if the distress was for more than the rent, for
that reason the defendants were trespassers from the beginning.
This is the direct and natural inference. It was nowhere said
that the remarks touching this point were foreign to the issue.
Of course, no one would infer that they were for the reprehen-
sible purpose of inducing punitive damages, if the plaintiffs
were entitled to recover for a trespass committed at a later stage
in the proceedings. The instructions which constitute the first,
second, third, fifth and seventh assignments were erroneous.

It is contended that plaintiffs' first point ought to have been
refused for another reason, to wit: That Monahan's wife had
no authority to reduce the rent, and that the contract, if made
by her as alleged, was without consideration and void. Mrs.

[Richards v. McGrath.]

McGrath testified that she talked with Monahan. " He came and he said $20, and he said he would send his wife to finish the agreement; and the week after Mrs. Monahan came and said $18 a month, and I agreed with her for $18 a month." From that, if believed, authority could be inferred. The lease was for the term of one year, and the agreement to reduce the rent was within the term and while the tenants occupied the premises. This is not the case of an oral change in the contract before the beginning of the term, nor like an extension of time or change of place for performance of a contract. McGrath threatened to leave. Had he done so without Monahan's assent, he would have continued to be bound for the rent of the whole term. We are of opinion that this contract, as proved by the plaintiffs, was nude.

After a distress has been lawfully made the landlord may commit an act in itself a trespass, and thereby become a trespasser ab initio. Notice and appraisement are essentials for the legality of a sale. If either of these be wanting, as prescribed by the statute, the sale is without authority, and the landlord is a trespasser from the beginning, as is a sheriff who sells goods he seized in execution upon notice of only five days. When the sale is invalid for want of authority to make it, trespass lies against the landlord : Kerr v. Sharpe, 14 S. & R. 399 ; Brisben v. Wilson, 60 Pa. St. 452. The omission to give notice to the tenant of the distress and the cause of it, does not make the landlord a trespasser, if the goods were replevied before sale : McKinney v. Reader, 6 Watts 34. Such omission is not trespass, and the replevin obviated the necessity of disposing of the goods by appraisement and sale. That the notice was duly served, and the appraisement made in proper time, are uncontroverted facts; but the plaintiffs allege that the inventory was defective. The court affirmed their second point, " That if the jury believe that Monahan and Richards and Watson had the purpose to sell out all the property of the plaintiffs without regard to whether the same paid the rent or not and in pursuance of that purpose levied upon their property respectively and failed to furnish a full and complete inventory of the goods levied upon and to appraise the same, but levied upon divers separate and distinct articles susceptible of weight and measurement in the lump or by the shelf, and so appraised and sold the same at a wanton and gross sacrifice, such acts of the defendants made them trespassers ab initio, or from the beginning, rendered them liable not only for the value of the goods so taken and disposed of, but for exemplary damages." If the proceedings and sale were lawful, the purpose of the defendants was immaterial; only in case of an invalid sale would their purpose be pertinent with reference to the damages. A landlord is not required to weigh or

[Richards *v.* McGrath.]

measure all the goods in a store which he has distrained, and give a full and complete inventory of every pound of such as are usually sold by weight, and of every yard or quart of such as are usually sold by measure; nor need he detail every article or notion in a stock of millinery goods. The inventory should be so full and complete as to inform the tenant of the goods distrained and for which he may issue a writ in replevin. If the proceedings had been such that the landlord with the officer was authorized to sell the goods, they should have sold in the mode in which sheriffs' or constables' sales are legally conducted. Goods must be sold separately, or in parcels; not the entire stock, in the mass. They may be sold in such lots or parcels as shall be best calculated to bring the highest price. If sold in too large parcels, the injured party may have a remedy, but not in trespass. The eighth assignment is sustained.

The plaintiffs' fourth point was: "That the defendant, Monahan, and the constable, having levied upon and sold the sewing machine, and then Monahan bought it in, he could not take advantage of his own wrong, by refusing to credit the amount for which it sold." And the answer, "He could not take advantage of his own wrong, but if he committed a mere mistake, he might correct it within a reasonable time." This machine was not the property of either plaintiff, and the owner took it back same as if there had been no sale. Monahan did not move it. He had right to correct the mistake, as the court instructed, within a reasonable time, and under the evidence, that time was until the close of the sale.

In response to the plaintiffs' fifth point, the court charged that if the defendants sold the goods for more rent than they claimed and was due, and legal costs, wantonly and to injure the plaintiffs, they were trespassers for so doing, and liable to exemplary damages, but if it was by oversight it would not be a case for exemplary damages. Understanding this with the other instructions in the cause, it led the jury to believe the defendants were liable in trespass if the distress was for more rent than was due; for exemplary damages if the distress and sale were purposely for more; for the value of the goods, if by oversight. Even if the jury could have understood the point as referring to such goods only as were sold after enough had been realized to pay the rent and costs, it did not follow that the plaintiffs were entitled to exemplary damages. In that view the answer was incorrect, for if such sale was by oversight, the defendants were not liable in trespass for the value of the goods. The point should have been refused.

Prior to the Act of 1772 a landlord could only hold the distrained goods as a pledge for enforcing payment of the rent. That act provides for selling the goods, and has been held to be

imperative on the landlord, which would seem to give to the distress the character of an execution : Quinn *v.* Wallace, 6 Whart. 452. Our statute is similar to the statute of William and Mary entitled, "An act for enabling the sale of goods distrained for rent in case the rent be not paid within a reasonable time." Under that act it was first decided, following the common law rule, that a tender after impounding availed nothing. But the only object of the authority given by law to distrain and sell the goods, being to procure payment of the rent, the hardship and injustice of allowing the landlord to refuse payment of rent and expenses before sale, and nevertheless proceed to sell the goods after tender of payment, was so great that such proceeding was deemed an abuse of the authority given to him by law, for which he was liable in an action on the case. It has been settled that upon an equitable construction of the statute of William and Mary a landlord ought not to sell goods after a tender of the rent and costs made at any time within five days, and that a sale after such tender is illegal : Johnson *v.* Upham, 2 El. & El. 250.

Here no tender was made within the five days, nor before the sale was begun. A good tender before the sale would have ended the right to sell. The Act of 1772 was passed for the benefit of the landlord, yet in some respects it is for the benefit of the tenant. It being made the duty of the party distraining to sell the goods distrained, the goods, instead of being taken as a mere pledge, are to be regarded more properly as taken in execution, because similar to that of an execution ; that is, a sale after six days' public notice, the proceeds applied to the payment of the rent or debt, and the costs or charges, and the surplus, if any, to be paid to the owner of the goods : Quinn *v.* Wallace, supra: A sale upon a landlord's warrant should be governed by like principles as a sale upon execution to collect a judgment. Only so much should be sold as will bring the amount required. When sufficient is realized the sale should stop. The property may be of such nature that it is impracticable to sell for the exact amount of the rent and charges, and in selling to make enough, there is likely to be an overplus. This is recognized by the law, and if the person selling acted honestly and with reasonable discretion, he will not be liable for the excessive sale. A tenant ought to be permitted to pay the money necessary to satisfy the warrant, whenever he can, with the same effect as if the money were made by sale of his goods. The chief object of the statute is to enable the landlord to collect his rent, not to sacrifice his tenant's property. After part of the goods was sold the plaintiffs tendered a sum of money. If that sum was less than the real balance, after correction of the mistake in selling the sewing machine, and before renewing the

4 OUTERBRIDGE—26

[Cooper *v.* Oriental Savings and Loan Association.]

sale the defendants proposed to make the correction, which the plaintiffs refused, the tender was insufficient. Then, both parties knew that the machine was wrongfully sold, that the mistake could be rectified without harm to either of them or the owner, and the landlord had the right to treat it as if not sold. Upon the assumption that the tender was for the full amount of the rent and charges not covered by the sales already made, the court ruled that the landlord was liable for the value of the goods afterwards sold, notwithstanding the proceedings before the tender were legal and regular. We are not convinced that there was error in such ruling, and the fourth, sixth and ninth assignments are not sustained.

Judgment reversed and venire facias de novo awarded.