Givens *v.* W. J. Gilmore Drug Company,
Appellant.

Argued September 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Albert C. Hirsch,* with him *Cresswell S. Shumaker,* of *Hirsch, Shumaker, Demmler & Bash,* for appellant.

*John A. Metz, Jr.,* with him *John A. Metz* and *A. S. Fingold,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 2, 1940:

Plaintiff was a tenant of the defendant corporation under a month to month lease of a property in McKees Rocks, Allegheny County, in which plaintiff both resided and carried on the business of a drug store. On July 6, 1933, defendant levied a distress on plaintiff's goods for rent unpaid in the alleged sum of $2,625. After appraisement, the merchandise and fixtures from the drug store were sold to defendant at a constable's sale, for the sum of $600. Thereupon plaintiff brought this action of trespass for wrongful distress. It was admitted at trial that plaintiff owed rent to defendant

at the time of the levy in the amount of $650 only, which included rent for July, 1933. In the statement of claim it is alleged: first, that the warrant was issued under a non-existent lease; second, that the landlord distrained for more rent than was due; and, third, that the levy included a greater amount of goods than was reasonably necessary to meet the rent actually due. Plaintiff asks for punitive as well as compensatory damages.

The case has been tried twice. Upon the first trial plaintiff recovered a verdict of $10,000, which was reduced by the court to $5,000. Plaintiff having elected to refuse the lesser sum, the case was again brought to trial, this time resulting in a verdict for plaintiff of $12,000. Another remittitur was ordered, reducing the verdict to $8,000, which plaintiff accepted. Judgment was accordingly entered for that sum, from which defendant has appealed.

The action for wrongful distress is an ancient one, founded upon the Statute of Marlbridge (Robert's Digest 170), and has long been recognized in this state: *McElroy v. Dice,* 17 Pa. 163; *Richards v. McGrath,* 100 Pa. 389, 397; *Bisk Candy Co. v. Stout,* 289 Pa. 369, 376; *Thomas v. Gibbons,* 21 Pa. Superior Ct. 635. Three types of wrongful distress are contemplated. If the landlord distrains when no rent is due, he is a trespasser. Such a wrongful distress is actionable under Section 3 of our Act of March 21, 1772, 1 Sm. L. 370 (68 PS Section 301), which provides for the imposition of double damages upon the landlord. We are here, however, concerned with the other two forms of wrongful distress, for which, under the Statute of Marlbridge, the tenant's remedy was by an action in trespass on the case. See *Richards v. McGrath,* supra, (p. 397). As stated in *Thomas v. Gibbons,* supra, (p. 638) : "An action for an excessive distress may be sustained either when the distress is for more rent than is due, or the goods distrained are, in value, unreasonably in excess

of the rent due."[1]  And see Trickett, Landlord and Tenant, (2d Ed. 1929) page 278 et seq.

There is no doubt that the distress warrant in the present case was issued for a sum greater than the amount of rent due. The lease, dated May 1, 1926, provided for a term of one month, renewable monthly thereafter, at a rental of $175, and plaintiff held over under the terms thereof until July 6, 1933. It is admitted that plaintiff owed $650 as rent under the lease, while the warrant stated $2,625 to be due,—the latter sum including not only arrearages, but rent for the balance of a one year term under an alleged new lease which did not exist. These facts are sufficient to sustain an action for wrongful distress. See *Bisk Candy Co. v. Stout,* supra, in which it is said (p. 376) : "Where the landlord mistakenly distrains for more rent than is rightfully due, he commits a wrong which no doubt entitles the tenant to nominal damages at least."

The more difficult question, however, is whether plaintiff has established a right of action for that form of wrongful distress where the goods distrained and sold are, in value, unreasonably in excess of the rent due. The clearest case of this sort is where, after a fund is realized at the constable's sale sufficient to meet the tenant's debt, the constable unnecessarily continues to sell goods. See, for example, *McElroy v. Dice,* supra.

In the present case, the goods sold brought less than the amount admitted by plaintiff to be due for rent. Such were the facts in *Bisk Candy Co. v. Stout,* supra, where the rent claimed was in the amount of $1,250 with costs, while the goods at constable's sale brought only $935. In this situation we held that unless the

---

[1] To the same effect we said, speaking by Chief Justice MOSCH-ZISKER, in *Bisk Candy Co. v. Stout,* 289 Pa. 369 (p. 373): "An excessive distress was made actionable by the Statute of Marlbridge (Robert's Digest 170) and such an action lies whenever the landlord distrains on a greater amount of goods than necessary, or for more rent than is honestly due."

plaintiff could show that the levy had been excessive, —that is, that the fair value of the goods seized was unreasonably more than the landlord's rightful claim, no substantial damages could be recovered, even though the distress warrant had claimed an undue amount. In consequence, we held that plaintiff had not been harmed by the court's failure to submit to the jury the question of damages where the wrong done to the tenant consisted only in the issuance of a warrant for more rent than was due.

In cases such as the present one the tenant must prove (1) that the levy was excessive in amount, or (2) that the excessive claim itself prevented him from bidding at the sale.[2] That the levy was too great can be shown only by evidence as to the fair value of the goods seized at the time of the levy, thereby establishing the fact that it had no reasonable relation to the amount of rent due. After he has thus proved that he has suffered actual harm, the tenant may then assert as his measure of damages, the replacement value of the goods,—that is "what it would cost to procure goods of like quality and put them in the place" of those sold, less, of course, the rightful amount of the rent claim. See *Fernwood M. H. Assn. v. Jones,* 102 Pa. 307.

It is to be borne in mind in this connection that fair value and replacement value are not necessarily the same. The cost of replacement in most cases will exceed both the fair value of an article, and the price it will yield at a public sale. If replacement value alone were the criterion by which the reasonableness of a levy is to be gauged, then no landlord in this state could safely afford to risk the consequences of a mere mistake in a distress for rent.

Here an examination of the record discloses that plaintiff produced little, if any, evidence as to the fair value

---

[2] Plaintiff does not assert, nor is there anything in the record to show, that he was prevented from bidding at the sale or from otherwise protecting his position as a result of the excessive claim set forth in the warrant.

of the goods sold, which consisted primarily of store fixtures and the stock of merchandise.

As to the fixtures, his testimony was limited to their description and dealt almost exclusively with replacement value. Only in one instance was the fair value of a fixture stated. Although he testified that the value of the fixtures was $5,045, he admitted that this figure was based upon original cost, less an arbitrary deduction of 25 per cent for depreciation. But he gave no effect to the fact that many of the fixtures had been in use for over forty years, and had survived several floods.

With respect to the stock of merchandise, the value he placed thereon was derived entirely from a figure contained in his income tax return dated January 1, 1933, six months before the levy was made. His merchandise, listed at cost, was there stated to be in the sum of $4,218.98, as the result of an inventory made by himself and his helper at the end of 1932. He said that he had maintained the same amount of stock until the levy, by purchases approximating five hundred dollars per month. Neither plaintiff nor the helper was able to testify in detail as to the particular items comprising this inventory, other than that they consisted of the usual line of goods carried by druggists.

It appears from the record that much of the merchandise was old stock which had been on hand for' more than five years, and therefore its valuation at cost was clearly inflated. The tax return showed that his total inventory had decreased to the extent of $2,000 during the year 1932, despite average monthly purchases of $500. It is reasonable to believe that it continued to decrease during the succeeding six months before the levy was made. There is evidence that plaintiff's business was failing, that he was making purchases from day to day to supply his current needs, and that sales were being made from the newer and more merchantable stock.

To rebut plaintiff's evidence witnesses on behalf of defendant, who made a careful checkup of the inventory, testified that most of the stock was unsalable; many of the tinctures were entirely dried up, some of the corks had been eaten away by mice, the narcotic drugs had to be destroyed by federal agents, the herbs had turned brown, most of the pills were cracked or discolored, and the supply of those trade-marked products for which drug stores receive the greatest demand was negligible.

The reliability of plaintiff's estimates of the value of his merchandise is made questionable by his repudiation of the copy of the tax return from which he testified. Upon cross-examination as to figures therein relating to depreciation of the fixtures, he said: "I don't know whether that is correct. I didn't sign that paper. I don't know anything about it. I don't know who made a copy of that or anything." This statement reduces his prior testimony to little more than a guess. Although the question was one for the jury, it seems clear that the evidence produced was insufficient to form a proper basis for their determination. Certainly it was not adequate to sustain a verdict of either $12,000 or $8,000.

Plaintiff contends, however, that regardless of the question whether the levy was excessive, the issuance of the warrant in a wrongful amount was malicious, and that he is therefore entitled to punitive damages on that ground alone. None of the cases cited by plaintiff supports his conclusion. On the contrary, it is well established that punitive damages must bear a reasonable relation to the actual damages suffered. Here, there is an absence of positive proof of actual damage, so that the award of $8,000 appears excessive on its face, and affords ample reason for the award of a new trial: *Rider v. York Haven W. & P. Co.*, 251 Pa. 18; *Mitchell v. Randal*, 288 Pa. 518; *Thompson v. Swank*, 317 Pa. 158. While plaintiff may have been harmed

as a result of defendant's action, the conclusion cannot be avoided, from reading the record, that an attempt has been made to base upon a simple tort a claim for excessive and unwarranted damages. The plaintiff is entitled to be made whole, not rich.

In both trials which have taken place, plaintiff has been permitted to prove and place considerable emphasis upon the net worth of the defendant company, that the jury might know what damages would sufficiently "punish" it. While this is in accord with several early decisions of this Court (*M'Almont v. M'Clelland*, 14 S. & R. 359; *McBride v. McLaughlin*, 5 Watts 375; *Matheis v. Mazet*, 164 Pa. 580), the jury should have been instructed that regardless of the fact that defendant is a large and prosperous corporation, punitive damages may not be disproportionate to actual damages. This rule is made clear in *Rider v. York Haven W. & P. Co.*, supra; *Mitchell v. Randal*, supra; *Thompson v. Swank*, supra; *Voltz v. General Motors Accept. Corp.*, 332 Pa. 141, in which punitive damages more than treble the actual damages, were declared excessive. It is also consistent with the provision in Section 3, of the Act of 1772, supra, which imposes only double damages upon a landlord who has distrained where no rent is due,—the most aggravated form of wrongful distress. Furthermore, as the placing before the jury of defendant's net worth can be exceedingly prejudicial, it should not be permitted to be introduced until plaintiff has made out a clear prima facie case justifying an award of punitive damages.

For the reasons stated we have reached the conclusion that a new trial must be granted. When this takes place, the jury should be afforded a proper basis for determining the fair value of the goods seized upon the levy. As we have said, evidence of replacement value alone will not suffice. The various factors which should receive consideration will, of course, vary with the facts of each case, but among the elements to be

taken into account will always be (1) the original cost of the goods, (2) their age, (3) their present condition, (4) their possible obsolescence, and (5) the extent of the present demand upon the market for goods of the particular character. The jury may also consider the price which the goods brought at public sale.

If the next trial results in a verdict for plaintiff, the jury should be instructed to itemize the damages, indicating, in separate findings, the actual damages and the punitive damages, if any be awarded. See *Mitchell v. Randal*, supra, (p. 522).

The judgment of the court below is reversed with a venire facias de novo.