## Shumaker, Appellant, *v.* Hankey et al.

Argued October 23, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*John E. Evans, Jr.,* with him *Paul J. Abraham* and *James C. Tallant,* for appellant.

*James A. Wright,* with him *Vincent R. Smith* and *Donald L. Hankey,* for appellees.

OPINION BY ARNOLD, J., March 5, 1946:

This trespass action was brought against F. L. Hankey and W. L. Hankey as landlords, and Caldwell (the bailiff and constable), for damages caused by a distraint. W. L. Hankey died pending trial, and his executors were substituted. From judgment on verdict for defendants plaintiff appealed.

Lessee-appellant was in default $450.00 for nine months rent, and landlords issued a warrant to Caldwell (a constable) as bailiff. Levy was made the same day, and after alleged notice of distress the goods were regularly appraised at $435.00, and after due advertisement sold to the landlords, partly by piece and partly in bulk, for $330.00.

The plaintiff-lessee lived about eight miles from the demised premises consisting of 312 acres, upon which were a dwelling house, barn and wagon shed. The dwelling house was occupied by plaintiff's employe, Elmer Shoemaker.

The distress was had under the Act of March 21, 1772, 1 Smith L. 370 (68 P.S. 251 et seq.), section 1 (68 P.S. 291) of which provides that ". . . notice thereof, with the cause of such taking, [shall be] left at the mansion house, or other most notorious place on the premises . . ." The burden was on the defendants to show compliance with the statute. The lessee had no actual notice of the distress. The bailiff, Caldwell, testified that he left a proper notice with Shoemaker, the occupant, at the dwelling house. This was denied. The bailiff testified that he had also posted the notice on the barn and wagon shed. The court below held that the notice of distress could be left *either* at the mansion house or another most notorious place on the premises, to wit the barn and wagon shed.

We think the statute was improperly construed. The notice is to be "left at the mansion house, *or* other most notorious place on the premises." (Emphasis supplied). Indubitably the mansion house is the most notorious place. Another "most notorious place" cannot coextensively exist. The statute must be read: ". . . notice thereof . . . left at the mansion house, or (if none) the other most notorious place on the premises". If the jury find that such notice was not left at the mansion house, the proceedings were irregular and recovery may be had for the value of the goods distrained and sold.

Posting on the barn or wagon shed is irrelevant. There is no presumption that the bailiff gave the notice required by the statute. The presumption of regularity of the acts of a public officer does not arise in distraint proceedings until the appraisement. From there on only a constable or sheriff may act: *Mortgage B. & L. Association v. Van Sciver*, 304 Pa. 408, 155 A. 920.

Plaintiff alleged that the distress was upon more goods than necessary to satisfy the demand (excessive levy and *not* distress for excessive rent). For this no right of action existed at common law: *McKinney v. Reader*, 6 Watts 34. A right of action was given by the English Statute of Marlbridge, which provides that the landlord shall be "grievously amerced for the excess of such distresses." "Grievous amercement" is analogous to punitive damages. Plaintiff's statement does not include a count either under the statute or for punitive damages. It alleges that the sale was *illegal* because of the excessive levy, and claims for the fair value of the goods sold. The Statute of Limitations has not run. Damages by way of "grievous amercement" are analogous to punitive damages in an action for abuse of civil process: *O'Donnel v. Seybert*, 13 S. & R. 54, 56. The latter rules are set forth in *Barnett v. Reed*, 51 Pa. 190, 196, the Supreme Court approving the lower court's charge at page 191. See also C. J.—Process—section 372. As to liquidation of damages in both an excessive levy and in an excessive distraint see *Givens v. W. J. Gilmore Drug Co.*, 337 Pa. 278, 282, et seq., 10 A. 2d 12, and the cases therein cited, particularly *Fernwood M. H. Ass'n. v. Jones*, 102 Pa. 307; *Bisk Candy Co. v. Stout*, 289 Pa. 369, 137 A. 612.

The gist of the action for an excessive levy (distraint) is not the sale thereafter but the excessive seizure. A regularly conducted public sale would result in only enough goods being *sold* to satisfy the claim, regardless of the amount of goods levied upon. While compensatory damages may be recovered in addition

to "grievous amercement" for an excessive levy, the compensatory damages are not measured by the value of the goods, because there was a right to sell sufficient goods to meet the defaulted rent. For the same reason the rent due cannot be set off against the damages. Where the action is for an *excessive claim* for rent, the tenant is damaged by the *sale* of sufficient goods to raise an exorbitant sum, in which instance the actual rent due may be set off.[1]

Defendants offered the written lease containing an acceleration clause which would have sustained a levy for rent for the balance of the term of $2950.00. This offer, standing alone, was not admissible. It was merely the statement of an abstract legal right, not followed by evidence that the landlords knew or considered it, or refrained from exercising it out of any tenderness toward the plaintiff. Plaintiff sought damages because defendants distrained for rent of $450.00 and seized goods allegedly worth several thousand dollars. Defendants are bound by what they did and not by what they might have done. Of course if the jury find from competent evidence that the landlords intentionally sought to ameliorate the plaintiff's position, the evidence would be admissible as to punitive damages. The gist of an action for an excessive distraint (levy) does not depend upon fraud, and the question of "fraud" only becomes material in assessing the amount of the grievous amercement or punitive damages.

It was disputed whether the goods were sold before the time fixed in the advertisement. If the jury sustains his contention plaintiff may recover the fair value of

---

[1] In reading *Givens v. W. J. Gilmore Drug Co.*, 337 Pa. 278, 282, 10 A. 2d 12, it should be noted that there was an excessive claim for rent which made the distraint excessive as to the *actual amount of rent due* even if the levy had not been excessive as to the amount of rent claimed. On the claim for an excessive levy and distraint, evidence must be given to fix the fair value of the goods at the time of the levy, thereby establishing the fact that it had no reasonable relation to the amount of rent due.

the goods sold. The sale here was partly by piece and partly in bulk because the landlords were the only bidders present. Under the circumstances the plaintiff was not injured merely by the manner in which the sale was had.

If the jury awards both compensatory damages and "grievous amercement" (punitive damages), the respective amounts should be found separately in the verdict: *Girens v. W. J. Gilmore Drug Co.*, 337 Pa. 278, 286; 10 A 2d. 12.

Assignments of error seventh, tenth, twelfth and thirteenth are meritorious and will be so treated in a retrial. Since they are applicable only in this case, discussion is unnecessary.

Judgment of the lower court is reversed with venire.