396 A.2d 430

**Edmund T. GOLOMB, t/a Andres Flowers,**

v.

**Alfonso KORUS and Earl Yoder, Appellants.**

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided Dec. 22, 1978.

William J. Purcell, Scranton, for appellants.

John M. Kuchka, Berwick, for appellee.

Before VAN der VOORT, WATKINS and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This appeal arises from an action in trespass for compensatory and punitive damages due to alleged defalcations in accounting for receipts of cash and inventory from the retail business of selling flowers and gifts owned by plaintiff, and the diversion of customers of that business to a new one opened and operated by the defendants-appellants at a different location. Defendants were employees of plaintiff. A jury returned one verdict in plaintiff's favor for $8000.00. Post-verdict motions having been overruled and judgment entered on the verdict, this appeal followed.

Two issues are before us involving the questions whether the verdict was excessive and whether there was any evidence to sustain an award of punitive damages.

At the outset it may be stated that the resolution of these issues is made more difficult, if not impossible, by the fact that only one verdict was rendered when both types of damages were demanded. Ordinarily it is the approved practice to instruct a jury to find the items of damages separately, particularly since punitive damages may not be disproportionate to the compensatory damages. *Bergen v. Lit. Bros. et al.*, 158 Pa.Super. 469, 45 A.2d 373 (1946), *Shurmaker v. Hankey*, 158 Pa.Super. 602, 45 A.2d 910 (1946). *Givens v. W. J. Gilmore Drug Co.*, 337 Pa. 278, 10 A.2d 12 (1940). *Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551 (1944), *Mitchell v. Randal*, 288 Pa. 518, 137 A. 171 (1927). See also 75 *Dickinson* L.R. 585 (1971).

However, we shall endeavor to resolve the matter, regardless, by first considering whether there is any merit to the claim for exemplary damages. Exemplary damages are allowed only when the act which creates actual damage also imports insult or outrage, and is committed with a view to oppress, or appears to have been committed in contempt of a plaintiff's rights. Although they have been allowed in certain cases for the tort of intentional interference with a prospective business advantage, there must be present malice or wanton conduct to justify the allowance. *North Carolina Mut. Life Ins. Co. v. Plymouth Mutual Life Ins. Co.,* D.C., 266 F.Supp. 231 (1967). Malice is the important ingredient. *Philadelphia Traction Co. v. Orbann,* 119 Pa. 37, 12 A. 816 (1888).

The present case presents a situation where the defendants divorced themselves from the business enterprise they had engaged in with the plaintiff, and established a similar business of their own, allegedly attracting some customers of the old business to the new one. The complaint alleges this was wrongfully done "—by advising them that the business was moving and was going to undergo a name change—". In addition, it alleged that they converted to their own use cash acquired through the operation of plaintiff's business, and also converted to their own use various items of inventory from his business. These allegations were all denied by the defendants.

It appears that the defendants were employed on a profit sharing basis of $1.60 per hour plus ⅓ of any profits. Plaintiff's principal business was wholesale. The flower and gift shop was retail and was opened at the request of the defendants. It constituted only five per cent of plaintiff's total operation. There was some dispute as to whether defendants were partners or employees. At first, defendants worked part time, but later devoted full time to the business. Their connection with the business began about May 1, 1974, and lasted until October 4, 1974. Defendants worked part time until July 1, 1974. During this period, plaintiff or his wife took charge after their departure for

work at another job. This occurred about 2 P.M. After July 1, 1974, although the defendants worked full time and did most of the designing of floral tributes, made purchases, paid some bills from cash receipts, and kept the books, the plaintiff, at the close of business each night, assumed charge of the cash and checks in the register, and signed all checks for disbursements. However, some disbursements were made by defendants from daily receipts. Finally plaintiff agreed to a distribution of profits at the termination of their relationship. Also, he was aware of the intention of the defendants to leave and establish their own business at least a month before they left, but did nothing to protect himself from any adverse effect.

Our review of this record demonstrates the loose methods of operation condoned or approved by plaintiff, his daily contact with the business and his participation in the distribution of profits at the end of his relationship with the defendants. If he was subjected to any losses by any wrongful acts of the defendant, he cannot be held to be completely without fault.

■■■■ We are of the opinion that the facts of this case do not satisfy the rule set forth in *Richette v. Pennsylvania R.R.*, 410 Pa. 6, 187 A.2d 910 (1963) which requires such acts of "malice, vindictiveness and wanton disregard" to encompass that kind of conduct that is wholly reckless of another's rights. Fraud, alone, is not sufficient to satisfy the rule. *People's National Bank v. Kern*, 193 Pa. 59, 44 A. 331 (1899). Therefore, plaintiff would not be entitled to a monetary penalty in this case, and the jury should not have been permitted to consider it.

In light of the foregoing conclusion, we must consider the verdict as encompassing only compensatory damages.

In *Myer Feinstein Co., to use v. De Vincent*, 151 Pa.Super. 254, 30 A.2d 221 (1943), the rule concerning the sufficiency of proof of damages is stated as follows: " 'Where there is a basis in the evidence for a reasonable computation of the damages suffered considering the nature of the transaction,

a verdict may be based thereon, though there may be involved some uncertainty about it.' " Citing *Weinglass v. Gibson*, 304 Pa. 203, 155 A. 439 (1931).

Reviewing this record, we agree with the lower court in the statement to be found in its opinion that "—some of the evidence was vague and sketchy." Aside from the plaintiff's testimony that when the defendants departed, his business was in a precarious condition with unpaid bills two months overdue, very little in the checking account and very little inventory left, there is nothing else in the record except the testimony of an accountant, Mr. Dantrich. Mr. Dantrich was not the accountant for the business, nor did he conduct an audit of its books. From books and data supplied to him by the plaintiff, he testified that the business showed a loss of $1235.00 for the months of May–June and July, 1974 and a profit of $259.00 for September, but that for October and November (after the departure of the defendants) there was a gross profit of $2783.00. As a conclusion, the accountant testified in answer to a hypothetical question based on the premise that the business was doing essentially the same amount of business at all times that "It would indicate that the volume of flowers going out of the shop was essentially the same. It would indicate to me that they were not charging the right prices for the flowers that had been sold for this period of time or all sales had not been recorded." However, he did testify further that for the first four months, sales were $14,578.00 and costs $10,622.00. Also, the plaintiff testified that when he settled with the defendants on their departure, a profit or loss statement showed a profit of $3,000.00 to be divided ⅓ or $1,000.00 to defendants and ⅔ or $2,000.00 to himself but since there was only about $1,000.00 shown as a balance in the check book, he gave them $250.00 apiece or $500.00 total and kept the balance for himself. In addition, he found $300.00 worth of inventory at that time.

There is no other evidence of loss of inventory nor is there any loss shown by the diversion of any customers from plaintiff's business to that of the defendants. The only

definite evidence of a loss which seems to be acknowledged by defendants is an item of $317.61 due to the diversion of a shipment of flowers to defendant's business which had been paid for by plaintiff and for which the trial judge directed the jury to find for the plaintiff.

Although in *Feinstein*, (supra), a verdict was permitted to be based on evidence involving some uncertainty, we do not believe the present evidence justifies a verdict in the amount returned by the jury ($8,000.00). This reason, coupled with the possibility that exemplary damages were included in it, compels us to reverse the judgment and to order a new trial.

Judgment is reversed and a new trial awarded.