**LURIA BROTHERS & COMPANY, INC.,
a corporation, Plaintiff,**

**v.**

**Thomas R. ALLEN, Jr. and Morton J. Greene, trading as Economy Industrial Properties, a partnership, Defendants.**

**Civ. A. No. 77–137.**

United States District Court,
W. D. Pennsylvania.

April 12, 1979.

P. Jerome Richey, Moorhead & Knox, Pittsburgh, Pa., for plaintiff.

Edward C. Leckey, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

Liability in this action was previously determined in accordance with this Court's Opinion in *Luria v. Allen*, 452 F.Supp. 732 *(W.D.Pa.1978)*. Before the Court at this time is defendants' motion for partial summary judgment concerning the issue of damages, and plaintiff's motion for an order compelling answers to interrogatories and production of documents allegedly relating to the issue of damages.

A detailed summary of the facts of the case appears in *Luria v. Allen, supra* at *733–35*. For purposes of the instant Opinion, however, an abbreviated recitation of the facts is sufficient. Luria Brothers and Company, Inc., plaintiff in the action (here-

after "Luria") stored certain of its steel plate in a building owned by Economy Industrial Properties (hereafter "Economy"), a partnership of Thomas R. Allen and Morton J. Greene, defendants in the action. Luria was permitted to so store its steel plate by Ogden Metals, Inc., Luria's parent corporation and a sublessee of the building. At the time of the events in question, Economy had leased the building to Bollinger Corporation (hereafter "Bollinger"), a corporation in which Allen and Greene were officers and in which Greene was a major shareholder; Bollinger, in turn, had subleased a portion of the building to Ogden Metals.

In March 1976 under Chapter XI of the Bankruptcy Act, a Receiver was appointed for Bollinger Corporation, which was undergoing financial difficulties, and Bollinger Corporation, at a time thereafter, terminated the lease with Economy and ceased paying rent. Economy then seized the steel plate of Luria, even though Ogden Metals, Luria's parent corporation, had prepaid its rent. Luria thereupon instituted suit against Allen and Greene, trading as Economy.

In a subsequent non-jury trial this Court found that Economy's seizure of the steel plate (1) violated *42 U.S.C. Sec. 1983*, and (2) was improper under Pennsylvania's Landlord and Tenant Act of 1951.[1] *Title 42 U.S.C. Sec. 1983*, states in relevant part: *"Every person who, under color of any statute . . . of any State or Territory, subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."* The Court found that the defendants had violated this provision in that the defendants' seizure of the plate without notice or a hearing deprived the plaintiff of property without due process of law, and that this deprivation constituted action by the state, and was thereby uncon-

stitutional, since the attempted distraint was effectuated pursuant to a state statute which created rights not recognized at common law.[2] Therefore, the Court found that by engaging in conduct which was unconstitutional, under color of the Pennsylvania statute, the defendants violated *42 U.S.C. Sec. 1983*. *Luria v. Allen, supra* at 737. The Court further found that the defendants' seizure of a sublessee's property after the primary lessee's lease had terminated was improper under the Pennsylvania Act and merited relief even had the defendants' actions not been found violative of the Constitution. Consequently, this Court found in favor of the plaintiff on the merits, with damages to be determined in a future proceeding.

The defendant now comes before the Court moving for a partial summary judgment on the question of damages.

Defendants' first contention is that even if defendants did violate *42 U.S.C. Sec. 1983*, as this Court so found, they cannot be held responsible for compensatory damages for such violation under the United States Supreme Court decision in *Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975)*, and the Court of Appeals for the Third Circuit's decision in *Kacher v. Pittsburgh National Bank, 545 F.2d 842 (1976)*. Regarding a state school official acting pursuant to a state school regulation, the Supreme Court held in *Wood* that a qualified immunity as to damages exists unless the actor *"knew or reasonably should have known that the action . . . would violate the constitutional rights of the [person] affected, . . . "* or unless he took the action *"with the malicious intention to cause a deprivation of constitutional rights or other injury . . . ."* *Wood v. Strickland, 420 U.S. at 322, 95 S.Ct. at 1001.* In *Kacher v. Pittsburgh National Bank,* the Court of Appeals for the Third Circuit likewise held that a qualified immunity as to damages exists for violations of Sec. 1983,

---

1. *68 P.S.Sec. 250.302 et seq.*

2. *Pennsylvania common law did not recognize any right of a landlord to distrain upon the* goods of a subtenant where the subtenancy was recognized by the landlord. *McComb's & Howden's Appeal, 43 Pa. 435 (1862).*

in this instance where the actor, a bank, acted pursuant to a state replevin statute which the United States Supreme Court later held to be unconstitutional. Defendants contend, therefore, that they fall within this qualified immunity to damages because, so they argue, at the time they seized plaintiff's property the state of the law was unclear as to whether such seizures undertaken by a private individual were unconstitutional, and that consequently they could not have *"known"* or *"should have known"* that their actions were unconstitutional. Defendants make this contention in the face of several decisions by this and other Courts prior to defendants' actions which held that the distraint provisions of the Pennsylvania Landlord and Tenant Act of 1951 were unconstitutional. See *Ragin v. Schwartz*, 393 F.Supp. 152 (W.D.Pa.1975); *Litton Business Systems, Inc. v. Paul L'Esperance, Inc.*, 387 F.Supp. 1265 (E.D.Pa. 1975); *Stots v. Media Real Estate Co.*, 355 F.Supp. 240 (E.D.Pa.1973); and *Gross v. Fox*, 349 F.Supp. 1164 (E.D.Pa.1972), *rev. on other grounds*, 496 F.2d 1153 (3d Cir. 1974).

The principal thrust of defendants' argument is that a violation of Sec. 1983 requires, *inter alia*, that there be a deprivation of a constitutional right, and that where the constitutional right in question is a deprivation of property without due process, it is necessary for there to be state action in order for the deprivation to attain constitutional dimensions. This being so, defendants continue, their seizure being a seizure by private individuals only, as opposed to seizure undertaken by a sheriff or constable, coupled with the fact that in the prior named decisions the Courts had not addressed the issue of whether a private individual acting pursuant to a state statute was in itself an instance of state action, defendants deduce that the state of the law was unclear as to their particular actions.[3] And, defendants conclude, if the state of

the law was unclear, defendants could not have known or reasonably should have known that their actions would rise to the dimensions of violating a constitutional right.

While there is some intrinsic appeal to this argument, the plain fact of the matter is that at the time defendants pursued their course of action the distraint provision of the Pennsylvania Landlord and Tenant Act of 1951 *had* been declared unconstitutional, both in particular factual situations and *on its face*. See *Ragin v. Schwartz, Litton Business Systems, Inc. v. Paul L'Esperance, Inc.; Stots v. Media Real Estate Co. and Gross v. Fox, supra*. With such holdings before defendants, it was not for defendants as individuals to formulate their own private legal theories as to why their proposed actions should fall within an exception to the Rules of the cases, and then blithely to proceed to engage in a procedure already declared unconstitutional by the Courts. Matters of interpretation of the law are matters for the Courts, and because the question of the presence of state action or any other issue may not have been specifically addressed in a particular judicial opinion does not grant to private individuals a license to interpret the law as to those unaddressed issues in such a way that the rule of the decision does not apply to them. To hold otherwise would be to invite chaos in the law.

Keeping in mind that the relevant standard here is *"knew or reasonably should have known,"* (emphasis added), this Court deems that when a provision of a state statute has been repeatedly declared unconstitutional it is reasonable for a private individual to believe that if he engages in procedures set up by said provisions, his actions are in all likelihood going to violate another's constitutional rights.

---

3. *Defendant also cites* Gibbs v. Titelman, *502 F.2d 1107 (3d Cir. 1974),* Smith v. Bekins Moving and Storage Co., *384 F.Supp. 1261 (E.D.Pa. 1974), and* Parks v. Mr. Ford, *386 F.Supp. 1251 (E.D.Pa.1975) as cases which made the state of the law unclear. Though these cases did address the question of presence or absence of*

*state action in their respective situations, none dealt with distraint under the Pennsylvania Landlord and Tenant Act. As such, defendants' contention that these cases fostered a lack of clarity regarding the constitutionality of defendants' proposed actions seems a tenuous argument at best.*

■ For these reasons, the Court holds that defendants in the action do not fall within the category of qualified immunity to damages in *42 U.S.C. Sec. 1983* actions.

■■ Defendants further contend that summary judgment should be granted on the question of punitive damages for violation of *42 U.S.C. Sec. 1983* and for improper distraint under Pennsylvania state law. Defendants cite as the case law on punitive damages for violation of *42 U.S.C. Sec. 1983, Cochetti v. Desmond, 572 F.2d 102 (3d Cir. 1978). Cochetti* adopted the test for punitive damages in such actions as being that the defendant must have acted with *"actual knowledge that he was violating a federally protected right or with reckless disregard of whether he was doing so." Cochetti v. Desmond, supra* at 106. Defendants' argument, of course, is based upon the previously discussed contention that the state of the law was unclear at the time defendants acted, and that thereby there could be no *"actual knowledge"* or *"reckless disregard"* of violating a federally-protected right. In accord with this Court's evaluation of the state of the law at the time defendants acted, however, i. e., that the state of the law was not unclear, whether or not defendants acted with *"actual knowledge"* or *"reckless disregard"* becomes a matter for the fact finder not a matter for disposition by summary judgment.

Likewise, defendants' contention that their actions do not constitute grounds for punitive damages for improper distraint under Pennsylvania law is not a matter for summary disposition but a matter for the fact finder. As defendant proposes, the applicable standard for punitive damages in Pennsylvania is aptly summarized in *Golomb v. Korus*, 396 A.2d 430 (Pa.Super. 1978):

"Exemplary damages are allowed only when the act which creates actual dam-age also imports insult or outrage, and is committed with a view to oppress, or appears to have been, committed in contempt of a plaintiff's rights." *Golomb v. Korus,* supra at 431.

This standard, however, is a standard which must be applied by the finder of fact to each particular situation. It is the role of the fact finder to assess if the defendants' conduct reaches the level of *"outrageous, contemptuous, etc."* and thereby to determine whether punitive damages are in order. It is not a matter for summary disposition.

Defendants' motion for a partial summary judgment, therefore, on the issues of both compensatory and punitive damages under *42 U.S.C. Sec. 1983* and punitive damages under Pennsylvania Law must be denied for the foregoing reasons.

Turning to plaintiff's motion for an order compelling answers to interrogatories and production of documents, the principal ground plaintiff proposes as the basis for its motion is that information such as that which will be disclosed by the answers and documents is relevant in determining the defendants' financial condition, and that such financial condition is admissible into evidence when the jury is faced with a question of punitive damages.[4] Defendant, on the other hand, counters by objecting that certain of the information sought will or may be inadmissible at trial for various reasons, primary of which is irrelevancy.[5]

■ With no need at this stage to engage in a point-by-point ruling on what is or is not admissible at trial, the Court feels it is sufficient to state that the object of discovery is not limited to disclosure of only that information which will be admissible at trial, but, to the contrary, the object is disclosure of any information which may lead to admissible evidence. As the weight of authority requires a defendant to disclose

---

4. *Plaintiff cites as authority on this point Herman v. Hess Oil Virgin Islands Corporation, 524 F.2d 767, 772 (3d Cir. 1975).*

5. *Examples of the information to which defendants object are debts owed, dates debts were incurred, individual, joint and partnership income tax returns from 1972 through 1977, locations of any property owned and names of other persons having an interest therein, and other information of similar kind.*

his financial condition in pretrial discovery when punitive damages are claimed, see *Pretrial Discovery of Defendant's Financial Worth in Issue of Damages*, 27 A.L.R.3d 1375 (1969), this Court holds that the information sought by plaintiff is discoverable. Defendants' desire not to have each and every detail of their financial condition open to public scrutiny if in fact certain information is held inadmissible at trial, however, is an understandable concern, and for that reason the Court does not deem that such data should be made a matter of public record. Therefore, plaintiff's motion to compel answers to interrogatories will be granted, but when such data is filed it should be filed as an impounded document. No sanctions will be imposed upon defendants for failure to answer interrogatories and produce documents up to this time, however, for the Court deems that defendants' opposition, though not prevailing on the merits, was made in good faith.