J-A17040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LEO J. DOLAN, JR. AND CHERIE M. DOLAN, H/W | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | : : | |
| v. | : : | |
| HURD MILLWORK COMPANY, INC., BENTLEY HOMES, LTD., GARVIN MITCHELL CORPORATION, CHADWELL ASSOCIATES, L.P., CHADWELL REALTY, INC., HARRISON COMMUNITY ASSOCIATION | : : : : : : : : | |
| Appellants | : | No. 2951 EDA 2015 |

Appeal from the Judgment Entered August 26, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2005-005801

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 21, 2019**

Appellants, Bentley Homes, Ltd., Garvin Mitchell Corporation, Chadwell

Associates, L.P., Chadwell Realty, Inc., and Harrison Community Association,

appeal from the judgment entered in the Delaware County Court of Common

Pleas, in favor of Appellee, Leo J. Dolan, Jr.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.

In July 1999, Appellee and Cherie M. Dolan entered into an agreement of

sale with Appellants for a new custom home for the purchase price of

_____

[1] Appellee and Cherie M. Dolan divorced while the case was pending in the
trial court.  Cherie M. Dolan is not a party to this appeal.

_____

*Retired Senior Judge assigned to the Superior Court.

$1,941,669.00. Settlement took place on November 10, 2000. Hurd Millwork Company, Inc. provided many of the windows used in the construction of Appellee's home. Within a year, the home developed substantial defects including air and water leaks around the windows.

On April 5, 2001, Hurd Millwork sued Appellants for unpaid invoices related to the construction of Appellee's home and other homes in the same community. Appellants filed an answer, new matter and counterclaim against Hurd Millwork, alleging Hurd Millwork had provided defective windows. Appellants further asserted that the defective windows Hurd Millwork provided caused air and water leaks in numerous homes in the community. In October 2002, Appellants and Hurd Millwork entered a settlement agreement, which contained specific admissions that numerous homes in the development, including Appellee's home, suffered from extensive defects and leaks.

During the pendency of the litigation between Hurd Millwork and Appellants, Appellee experienced numerous additional problems with the home including, but not limited to, severe air and water leaks, rotted wood, and issues with the stucco wall. Appellants made some repairs to the home; however, the leaks and damage continued to worsen. Ultimately, Appellee hired a civil engineer to assess the home and determine what repairs were necessary to fix the problems with the home. The repairs and associated costs necessary to fix Appellee's home totaled $826,695.99.

On May 24, 2005, Appellee filed a writ of summons against Appellants and Hurd Millwork. Appellee subsequently filed a complaint against Appellants and Hurd Millwork on September 6, 2005. The complaint raised claims against Appellants for negligence, breach of express and implied warranties, negligent misrepresentation, fraud and/or intentional misrepresentation, and violations of the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"). Appellee's complaint against Appellants sought punitive damages. The complaint also raised claims against Hurd Millwork for breach of express and implied warranties, negligence, and products liability. On November 4, 2005, Appellants filed preliminary objections, which the court overruled on February 2, 2006. Appellants filed an answer, new matter and cross-claim against Hurd Millwork on March 1, 2006. Appellants' cross-claim alleged Hurd Millwork was solely or jointly liable for Appellee's injuries.

On March 2, 2006, Hurd Millwork filed an answer to Appellants' cross-claim. Hurd Millwork filed a separate answer and new matter to Appellee's complaint on March 13, 2006, as well as a cross-claim against Appellants, which alleged Appellants were solely or jointly liable for Appellee's injuries. Appellants filed an answer to Hurd Millwork's cross-claim on March 14, 2006. Appellants subsequently filed joinder complaints against numerous other parties involved in the construction of Appellee's home. All parties underwent settlement discussions, which resulted in the dismissal of the

joined defendants from the case and a settlement agreement between Appellee and Hurd Millwork.[2]

The case eventually proceeded to a bench trial on January 26, 2015. The only claims remaining for the court to address were Appellee's claims against Appellants and Appellants' cross-claim against Hurd Millwork. Despite the pending cross-claim, Hurd Millwork did not appear at trial. Prior to the presentation of testimony, the parties stipulated to the defective nature of the Hurd Millwork windows used in the construction of Appellee's home.

Appellee presented the only evidence at trial, which supported his claims against Appellants. Specifically, Appellee presented testimony from Paul Neff, an expert in residential construction and residential remediation. Mr. Neff testified, *inter alia*: (1) he was the site superintendent involved in all aspects of the remediation necessary for Appellee's home; (2) remediation of Appellee's home included, but was not limited to, taking down all stucco from the home, tearing off the roof, and removing and replacing all windows in the home; (3) the total remediation cost billed to Appellee for those repairs was $597,191.54; and (4) all repairs were reasonable and necessary. (**See** N.T. Trial, 1/26/15, at 5-26; R.R. at 917a-938a).

Daniel Honig, an expert in civil engineering with structural specialty

---

[2] Hurd Millwork is not a party to this appeal.

and expertise in the area of home repair and remediation, testified, *inter alia*: (1) Appellee's home required drill testing by a specialty group to provide data on the exterior envelope moisture conditions; (2) the drill tests on Appellee's home showed a failure on 122 of the 200 drill probes performed, or a 61% failure rate, which is an "astounding number"; (3) a "failure" is either an excessive moisture reading or "no resistance" in the underlying oriented strand board ("OSB"), where there is so much saturation that the OSB has actually disappeared; (4) to put things in perspective, Mr. Honig explained that a rate of 14% or less of moisture is normal/expected, 14% to 19% is questionable, and anything above 19% is a failure; (5) the excessive moisture reading in Appellee's home indicated a "pervasive" and "widespread" problem; (6) problems in Appellee's home included, but were not limited to, improper roof edge detailing, lack of sealant around the birdsmouth trim, lack of weep screed detail, improper lack of flashing around the windows, and lack of horizontal and vertical control joint detailing in the stucco installation; (7) the construction of Appellee's home fell "woefully short" of compliance with the Building Officials and Code Administrators ("BOCA") requirements; (8) the deficiencies in the construction of Appellee's home were a factual cause of the damages suffered; and (9) remediation of Appellee's home was necessary and the costs incurred to remediate were reasonable. (***See id.*** at 27-76; R.R. at 939a-988a).

Appellee testified, *inter alia*: (1) he moved into his home in November

2000; (2) within the first few years, Appellee observed some problems with the home including air leaks, a leak in the chimney, problems with the French doors, and rot behind the stucco; (3) Appellee contacted Appellants on multiple occasions to fix the problems—some problems were fixed without difficulty, others were not; (4) by 2003, Appellee thought most of the problems in his home had been fixed and did not anticipate further difficulties; (5) nevertheless, in 2005, "things started to seem to get serious," when Appellee noticed the wood frame at the bottom of a window in his family room appeared rotted and there was a large green hole; (6) this observation in 2005 was the "big trigger" that there was some underlying defect to Appellee's home; (7) in May 2005, Appellee learned for the first time that Appellants had been involved in litigation with Hurd Millwork and recovered a settlement due to Hurd Millwork's manufacture of defective windows installed in various homes in Appellee's development, including windows installed throughout Appellee's "entire home"; (8) Appellants did not disclose the lawsuit or settlement to Appellee at any time or offer Appellee any proceeds from the settlement; (9) in August 2005, Appellee hired Mr. Honig to identify the various defects in Appellee's home and develop a plain for remediation; (10) in 2008, extensive remediation began to cure the defects; and (11) Appellee expended a total of $826,695.99, which included additional costs associated with the remediation. (*See id.* at 79-182; R.R. at 991a-1094a).

- 6 -

Appellants did not present a defense to rebut Appellee's claims or present evidence to prove its cross-claim against Hurd Millwork. At the conclusion of trial, the court took the matter under advisement pending the preparation of proposed findings of fact/conclusions of law by both parties. Both parties filed their respective proposed findings of fact/conclusions of law on May 20, 2015. By order dated June 18, 2015, entered on the docket on June 19, 2015, with Pa.R.C.P. 236 notice sent on June 22, 2015, the court entered a general verdict against Appellants, jointly and severally, for $500,000.00 in damages. The court's ruling did not expressly address Appellants' pending cross-claim.[3]

On June 26, 2015, Appellants timely filed a motion for post-trial relief, and Appellee timely filed a motion for delay damages on June 30, 2015. On August 19, 2015, the court denied Appellants' motion for post-trial relief. The same day, the court granted Appellee's motion for delay damages and molded the verdict to $748,287.67. Appellee filed a *praecipe* for entry of judgment on August 26, 2015. On September 16, 2015, Appellants timely filed a notice of appeal. The court did not order Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b),

---

[3] Nevertheless, the court explained in its Rule 1925(a) opinion that Appellants presented no evidence at trial to support their cross-claim, so Appellants effectively abandoned that claim. Moreover, Appellants had already reached a settlement with Hurd Millwork in October 2002, ostensibly for damages involving the defective windows installed in Appellee's home. We discuss Appellants' cross-claim more fully in our review of Appellants' eighth issue on appeal.

and Appellants did not file one. The trial court issued a conclusory three-page opinion pursuant to Pa.R.A.P. 1925(a).

This Court remanded the case on January 13, 2017, and directed the trial court to prepare a supplemental opinion addressing all of Appellants' issues. Upon remand, the President Judge of the county court filed a "Response to Remand," stating the trial judge had retired; and no one currently on the bench could prepare the supplemental opinion as ordered. Due to the lack of a trial court opinion and guidance concerning, *inter alia*, on which claims the trial court had awarded Appellee relief, this Court vacated the judgment on February 17, 2017, and remanded for a new trial on liability and damages. On October 17, 2018, our Supreme Court reversed and remanded, holding that where a trial court opinion is inadequate and the trial judge is unavailable to provide a supplemental opinion, the appellate court should review the legal issues raised in the appellant's Rule 1925(b) statement and decide whether the court's factual findings were supported by competent evidence. ***See Dolan v. Hurd Millwork Company, Inc.***, ___ Pa. ___, 195 A.3d 169 (2018).

Appellants raise the following issues for our review:[4]

> 1. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING DAMAGES FOR NEGLIGENCE WHERE THAT CLAIM IS BARRED BY THE GIST OF THE ACTION DOCTRINE, THE ECONOMIC LOSS DOCTRINE, AND THE STATUTE OF LIMITATIONS[?]

---

[4] We have reordered Appellants' second and third issues.

- 8 -

2. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING DAMAGES FOR NEGLIGENT MISREPRESENTATION AND FRAUD/INTENTIONAL MISREPRESENTATION WHERE THOSE CLAIMS ARE BARRED BY THE GIST OF THE ACTION DOCTRINE, THE ECONOMIC LOSS DOCTRINE, AND THE STATUTE OF LIMITATIONS[?]

3. WHETHER [APPELLEE] IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING DAMAGES FOR BREACH OF EXPRESS AND IMPLIED WARRANTIES WHERE THOSE CLAIMS CANNOT BE MAINTAINED AGAINST [APPELLANTS], ARE BARRED BY THE STATUTE OF LIMITATIONS, [APPELLEE] FAILED TO PRESENT EVIDENCE OF THE TERMS OF THE EXPRESS WARRANTIES AT TRIAL, AND [APPELLEE] FAILED TO GIVE THE OPPORTUNITY TO REPAIR OR NOTICE OF THE DEFECTS FOR WHICH THE PARTY NOW SEEKS AN AWARD OF DAMAGES[?]

4. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING AN AWARD OF PUNITIVE DAMAGES WHERE PENNSYLVANIA LAW DOES NOT RECOGNIZE AN INDEPENDENT CAUSE OF ACTION FOR PUNITIVE DAMAGES AND NONE OF THE CLAIMS CAN SUPPORT A CLAIM FOR PUNITIVE DAMAGES[?]

5. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING DAMAGES UNDER THE [UTPCPL] WHERE THAT CLAIM CAN BE MAINTAINED, IF AT ALL, ONLY AGAINST THE SELLER AND THE FRAUDULENT OR DECEPTIVE CONDUCT UPON WHICH THE CLAIM IS BASED OCCURRED, IF AT ALL, AFTER THE PURCHASE OF THE REAL PROPERTY AT ISSUE[?]

6. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING AN AWARD OF DAMAGES WHERE BY THE PARTY'S OWN ADMISSION, THE PARTY FAILED TO MITIGATE ITS DAMAGES AND RENDERED IT IMPOSSIBLE FOR THE COURT TO DETERMINE THE PROPER AMOUNT OF DAMAGES TO AWARD TO THE PARTY[?]

7. WHETHER A PARTY IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING AN AWARD OF DAMAGES FOR BREACH OF CONTRACT WHERE THE PARTY NEVER [PLED]

SUCH A CLAIM, DID NOT SEEK LEAVE AT TRIAL TO AMEND TO INCLUDE SUCH A CLAIM, AND ANY SUCH CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS[?]

8. WHETHER [APPELLANTS ARE] ENTITLED TO AN AWARD OF INDEMNIFICATION AND/OR CONTRIBUTION AGAINST A CO-DEFENDANT WHERE THE EVIDENCE IS CLEAR THAT THE CO-DEFENDANT'S CONDUCT CAUSED INJURY TO [APPELLEE] AND THE BASIS OF [APPELLANTS'] LIABILITY TO [APPELLEE] IS DUE TO THE CO-DEFENDANT'S CONDUCT[?]

9. WHETHER [APPELLEE] IS PRECLUDED AS A MATTER OF LAW FROM OBTAINING DELAY DAMAGES WHERE THE UNDERLYING ACTION IS BASED UPON THE CONTRACTUAL RELATIONSHIP OF THE PARTIES TO THE LITIGATION AND DELAY DAMAGES ARE NOT AVAILABLE IN CONTRACT ACTIONS[?]

(Appellants' Brief at 5-7).

Our standard of review following a bench trial is as follows:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Good v. Holstein*, 787 A.2d 426, 429 (Pa.Super. 2001), *appeal denied*, 568 Pa. 738, 798 A.2d 1290 (2002).

Further, Pennsylvania law has adopted the "general-verdict rule," providing that when the fact-finder "returns a general verdict involving two or more issues and its verdict is supported as to at least one issue, the verdict will not be reversed on appeal." *Halper v. Jewish Family & Children's Services of Greater Philadelphia*, 600 Pa. 145, 156-57, 963

A.2d 1282, 1289 (2009).  A defendant who fails to request a special verdict sheet in a civil case will be barred on appeal from complaining that the fact-finder may have relied on a theory of liability unsupported by the evidence when there was sufficient evidence to support another theory of liability.  ***Id.*** (reinstating jury's general verdict in favor of plaintiffs; even though one theory of liability on which plaintiffs proceeded was legally untenable, defendant did not request special verdict slip and evidence was sufficient to support at least one of plaintiffs' two theories of liability).

For purposes of disposition, we combine Appellants' first and second issues.  Appellants argue that their duties to Appellee, if any duties exist, arose from the agreement of sale.  Appellants assert that Appellee claims his damages resulted from Appellants' alleged failure to perform one of the specific duties imposed by the agreement of sale, namely, to construct the property.  Appellants insist they would not have been obligated to construct the property but for the existence of the agreement of sale.  Appellants contend their alleged obligations to make repairs and/or compensate Appellee for any alleged damages due to faulty construction arose solely from the obligations set forth in the agreement of sale.  Appellants suggest Appellee's fraud and misrepresentation claims similarly concerned and arose out of Appellants' performance of contractual duties.  Appellants maintain Appellee's complaints essentially duplicate a breach of contract action, so his claims for negligence, negligent misrepresentation, and intentional

- 11 -

misrepresentation/fraud are barred by the "gist of the action" doctrine.

Appellants also aver Appellee's tort claims are barred by the economic loss doctrine because the only loss Appellee allegedly suffered was damage to his property and the costs necessary to repair the property. Appellants maintain the allegedly defective windows were an integrated part of the house, so Appellee incurred no damage to "other property" aside from the house itself. Appellants submit that any damage to the property as a result of the defective windows was nothing more than the loss of the bargain of the agreement of sale, which can be redressed by a breach of contract or breach of warranty claim.

Appellants further argue Appellee's tort claims are barred by the two-year statute of limitations. Appellants highlight Appellee's admission that he had problems with the windows in his home as early as December 2000 and January 2001, and moisture leaks in November 2001. Appellants submit the statute of limitations began to run at that time, and Appellee was under an obligation in 2000 and 2001 to investigate the condition of the windows. Appellants maintain that once Appellee knew of the window leaks, he knew that he was "injured," and reasonably should have discovered the extent of that injury. Appellants conclude Appellee's tort claims are time-barred, precluded by the gist of the action and economic loss doctrines, and this Court must reverse the judgment in favor of Appellee. We disagree.

This Court has recognized the gist of the action doctrine as barring a

plaintiff from recasting ordinary breach of contract claims as tort claims. ***eToll, Inc. v. Elias/Savion Advertising, Inc.***, 811 A.2d 10 (Pa.Super. 2002). That doctrine provides "a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." ***Hart v. Arnold***, 884 A.2d 316, 339-40 (Pa.Super. 2005), *appeal denied*, 587 Pa. 695, 897 A.2d 458 (2006) (emphasis omitted). "The 'gist of the action' test is a general test concerned with the 'essential ground,' foundation, or material part of an entire 'formal complaint' or lawsuit." ***Id.*** at 340. The doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." ***Id.***

Importantly, "the mere existence of a contract between two parties does not, *ipso facto*, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." ***Bruno v. Erie Ins. Co.***, 630 Pa. 79, 114, 106 A.3d 48, 69 (2014). Rather:

> [T]he nature of the duty alleged to have been breached, as established by the underlying averments supporting the claim in a plaintiff's complaint, [is] the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract. In this regard, the substance of the allegations comprising a claim in a

> plaintiff's complaint [is] of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, *e.g.*, for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—*i.e.*, a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

> \* \* \*

> Consequently, a negligence claim based on the actions of a contracting party in performing contractual obligations is not viewed as an action on the underlying contract itself, since it is not founded on the breach of any of the specific executory promises which comprise the contract. Instead, the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed.

*Id.* at 111-14, 106 A.3d at 68-70 (holding plaintiffs' negligence claim against defendant insurance company was not barred by gist of action doctrine; plaintiffs' claim was predicated on allegedly negligent actions by defendant's agents while they were performing contractual obligation to investigate claim made by plaintiffs under their homeowners' insurance policy to determine if mold discovery triggered any of defendant's payment obligations; while conducting investigation, plaintiffs alleged defendant's agents acted in negligent manner by making false assurances regarding toxicity of mold and affirmatively recommending that plaintiffs continue

renovation efforts, which caused them to suffer physical harm based on those assurances; these allegations of negligence facially concern defendant's alleged breach of general social duty, beyond breach of any duty created by insurance policy itself; insurance policy here served merely as vehicle to establish relationship between parties, and during that relationship defendant allegedly committed tort).

The economic loss doctrine similarly prohibits tort causes of action where the damages alleged are solely economic, unaccompanied by physical injury or property damage. ***Adams v. Copper Beach Townhome Communities, L.P.***, 816 A.2d 301 (Pa.Super. 2003). ***See also Spivack v. Berks Ridge Corp. Inc.***, 586 A.2d 402 (Pa.Super. 1990) (holding dismissal of appellants' negligence claim against builder/contractor for various defects in condominium unit was proper under economic loss doctrine where record demonstrated no personal injury to appellants or property damage to their condominium resulting from builder/contractor's actions or inactions).

Typically arising in products liability cases, this Court has explained:

> [W]here an allegedly defective product causes damage only to itself, and other consequential damages resulting from the loss of the use of the product, the law of contract is the proper arena for redressing the harm because in such a case, the damages alleged relate specifically to product quality and value as to which the parties have had the opportunity to negotiate and contract in advance. They have allocated the risks of possible types of losses, and agreed on the level of quality that will be given for the price demanded. When the product fails to conform and only economic losses result, the parties' recovery one against the other for economic losses should be limited to

an action on that contract and no additional recovery in negligence or strict liability is permitted.

*New York State Elec. & Gas Corp. v. Westinghouse Elec. Corp.*, 564 A.2d 919, 925-26 (Pa.Super. 1989) (*en banc*) (holding economic loss doctrine precluded theories of negligence and strict liability where parties entered fully integrated contracts governing product involved, agreed to limited warranties regarding quality of product and services to be provided, and to limited remedies for failure to conform to those warranties). Further, "where various components of a product are provided by the same supplier as part of a complete and integrated package, even if a defect in one component damages another, there is no damage to 'other property' of the plaintiff." *Id.* at 925. In this situation, "the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of his bargain—traditionally, the core concern of contract law." *REM Coal Co., Inc. v. Clark Equipment Co.*, 563 A.2d 128, 132 (Pa.Super. 1989) (*en banc*) (internal citation omitted). Thus, "Pennsylvania's breach of warranty law supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties as to product performance. It provides a disappointed purchaser a complete remedy for loss of the product itself and of its use within the limits of the parties' contractual understandings." *Id.* at 133.

Actions sounding in negligence, negligent misrepresentation, and fraud must be commenced within two years. 42 Pa.C.S.A. § 5524(7). "The

statute of limitations requires aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made…." ***Meehan v. Archdiocese of Philadelphia***, 870 A.2d 912, 919 (Pa.Super. 2005), *appeal denied*, 584 Pa. 717, 885 A.2d 985 (2005) (internal citation omitted). "Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." ***Kingston Coal Co. v. Felton Min. Co., Inc.***, 690 A.2d 284, 288 (Pa.Super. 1997), *appeal denied*, 549 Pa. 702, 700 A.2d 441 (1997).

As a general rule, the statute of limitations begins to run as soon as the injury occurs; "lack of knowledge, mistake or misunderstanding [does] not toll the running of the statute of limitations…." ***Pocono Intern. Raceway, Inc. v. Pocono Produce, Inc.***, 503 Pa. 80, 84, 468 A.2d 468, 471 (1983). The right to institute a suit generally "arises when the injury is inflicted." ***Fine v. Checcio***, 582 Pa. 253, 266, 870 A.2d 850, 857 (2005) (internal citation omitted). "[A] party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." ***Pocono Intern. Raceway, Inc., supra*** at 84, 468 A.2d at 471. "A plaintiff need not know the precise extent of [his] injuries before the statutory period begins to run."

***Sterling v. St. Michael's School for Boys***, 660 A.2d 64, 66 (Pa.Super. 1995), *appeal denied*, 543 Pa. 695, 670 A.2d 142 (1995).

"The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period." ***Meehan, supra*** at 919. The discovery rule provides:

> [W]here the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible. The "discovery rule" arises from the inability of the injured party, despite the exercise of reasonable diligence, to know of the injury or its cause. Its purpose is to exclude the period of time during which the injured party is reasonably unaware that an injury has been sustained so that people in that class have essentially the same rights as those who suffer an immediately ascertainable injury.

***Kingston Coal Co., supra*** at 288-89 (emphasis and internal citation omitted). In other words, the discovery rule tolls the statute of limitations "until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." ***Crouse v. Cyclops Industries***, 560 Pa. 394, 404, 745 A.2d 606, 611 (2000). "The statute begins to run when the injured party [possesses] sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." ***Haggart v. Cho***, 703 A.2d 522, 526 (Pa.Super. 1997), *appeal denied*, 553 Pa. 698, 718 A.2d 785 (1998).

"The party seeking to invoke the discovery rule bears the burden of

establishing the inability to know of the injury despite the exercise of reasonable diligence." ***Dalrymple v. Brown***, 549 Pa. 217, 224, 701 A.2d 164, 167 (1997). The reasonable diligence standard "is not a standard of reasonable diligence unique to a particular plaintiff, but instead, a standard of reasonable diligence as applied to a 'reasonable person.'" ***Id.*** "[T]he point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the [fact-finder]; only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." ***E.J.M. v. Archdiocese of Philadelphia***, 622 A.2d 1388, 1391 (Pa.Super. 1993) (internal citation omitted). ***See also Nicolaou v. Martin***, ___ Pa. ___, 195 A.3d 880 (2018) (holding when appellant reasonably knew or should have known of appellees' misdiagnosis of multiple sclerosis was question for fact-finder, where appellees told appellant over seven years that she had four negative tests for Lyme disease; appellant was later able independently to confirm Lyme disease diagnosis); ***Gleason v. Borough of Moosic***, 609 Pa. 353, 15 A.3d 479 (2011) (holding when appellants reasonably knew or should have known they had suffered injury from toxic mold was question for fact-finder, where basement flooding occurred in 1993, mold was discovered in 1997, and appellants began to experience health problems in 1997, but appellants did not learn about effects of toxic mold until television program on topic aired in 2000).

Instantly, the trial court explained:

> [Appellants] argue that [Appellee's] negligence claims are barred by the "gist of the action" doctrine. However, the negligence claims are not barred by that doctrine as the claims were based on the breach of the social duty imposed by the law of torts and not a breach of a duty created by the underlying contract. The gist of [Appellee's] action surrounding [his] negligence claims is that [Appellants] were negligent in their actions and omissions in performing their obligations.

(Trial Court Opinion, filed October 26, 2015, at 2; R.R. at 493a). Essentially, the court decided the "gist" of Appellee's action sounded in tort, not contract.

In his negligence, negligent misrepresentation, and intentional misrepresentation/fraud claims, Appellee alleged, *inter alia*: Appellants had a duty to construct Appellee's home properly, which included appropriate installation of all windows and doors; soon after Appellee moved into the home, he began experiencing water and air leaks, which he reported to Appellants; Appellants made some isolated repairs to the property but did not disclose at any time that the windows manufactured by Hurd Millwork were defective and would cause systemic problems throughout Appellee's entire home; Appellants knew the windows installed in Appellee's home were defective, as evidenced by Appellants' litigation with Hurd Millwork, but made no effort to replace the defective windows or to notify Appellee of their defective nature; Appellants failed to perform their duties in a workmanlike manner; Appellants misrepresented the exact nature of the problem with the

leaking windows as well as the exact nature of the remediation steps taken to repair those windows; alternatively, Appellants misrepresented that the windows had been repaired properly even though Appellants knew or should have known their representation was untrue; Appellee reasonably relied on Appellants' misrepresentations; the problems with leaking windows in Appellee's residence caused elevated moisture, which spawned the growth of biological contaminants; as a result of Appellants' actions, Appellee sustained substantial damage, not only to the defective windows, but also to internal structures in Appellee's home, as well as to personal items. (**See** Complaint, filed 9/6/05, at unnumbered pp. 1-16; 19-22; R.R. at 32a-47a; 50a-53a).

Thus, the crux of Appellee's negligence, negligent misrepresentation and intentional misrepresentation/fraud claims is predicated on Appellants' actions, misrepresentations, and omissions while investigating Appellee's repeated complaints about leaks in his house. According to Appellee, Appellants led him to believe the problems were isolated and fixable and Appellants had made the necessary repairs, even though Appellants knew the windows were defective, would cause systemic problems throughout Appellee's entire home, and needed to be replaced—not "repaired." These allegations reach beyond the contractual obligations set forth in the parties' agreement of sale. Instead, the agreement of sale merely served as the vehicle to establish the ongoing relationship between the parties, during

which Appellants allegedly committed various torts. Consequently, the gist of the action doctrine did not bar Appellee's tort claims. **See Bruno, supra**.

Additionally, the damages Appellee sustained exceeded the costs to repair and ultimately replace the defective windows. The damages also involved the internal structures and personal property within Appellee's home, which did not constitute a "complete and integrated" part of the alleged defective property. **See New York State Elec., supra**. Thus, the economic loss doctrine did not bar Appellee's tort claims. **See Adams, supra**. **Compare Spivak, supra**.

Regarding the statute of limitations, Appellee moved into his home in November 2000. Appellee testified that he observed some problems with the house within the first few years, such as air leaks, but by 2003, Appellee was led to believe the problems in his home had been isolated and fixed; he did not anticipate further difficulties. Appellee stated it was not until 2005 that "things started to seem to get serious," when Appellee noticed the wood frame at the bottom of a window in his family room appeared rotted and there was a large green hole. Appellee explained this observation in 2005 was the "big trigger" of some underlying defect to Appellee's home. Appellee said he learned for the first time, in May 2005, of Appellants' litigation and settlement with Hurd Millwork due to Hurd Millwork's manufacture of defective windows installed in various homes in Appellee's development, including windows installed throughout Appellee's home.

Appellee filed a writ of summons against Appellants and Hurd Millwork on May 24, 2005.

Under these circumstances, the point at which Appellee should have been reasonably aware of his "injury" was an issue of fact for the court to decide at the bench trial. ***See Nicolaou, supra***; ***Gleason, supra***; ***E.J.M., supra***. The record shows Appellee did not possess sufficient critical facts to put him on notice of a systemic problem in his home until 2005, when he observed the large green hole and subsequently learned of the litigation between Appellants and Hurd Millwork. ***See Haggart, supra***. Thus, we see no reason to disturb the court's conclusion that the discovery rule tolled the applicable two-year statute of limitations concerning Appellee's negligence, negligent misrepresentation, and intentional misrepresentation/fraud claims. ***See Good, supra***. Therefore, Appellants' first and second issues merit no relief.

For purposes of disposition, we combine Appellants' third, sixth, seventh, and ninth issues. In their third issue, Appellants argue only a builder impliedly warrants that a home is constructed in a reasonably workmanlike manner and is fit for habitation. Appellants assert an implied warranty of habitability does not extend to a developer or other parties. Appellants contend that Gavin Mitchell Corporation is the builder of Appellee's home, as set forth in the agreement of sale. Appellants suggest Appellee can maintain a cause of action for breach of implied warranty

against only Gavin Mitchell Corporation, so Appellee's breach of implied warranty claim against the remaining Appellants fails as a matter of law. Likewise, Appellants aver Appellee's breach of express warranty claim against the non-builder Appellants fails because only the builder issued the warranty at issue.

Appellants also insist Appellee's property is not a "good," subject to express warranties under Pennsylvania's Uniform Commercial Code, so Appellee's breach of express warranty claim fails as a matter of law. To the extent Appellee could succeed on his breach of express warranty claim, Appellants maintain it is barred by the applicable four-year statute of limitations because Appellee first became aware of problems with his windows in December 2000, but he did not file his writ of summons until May 2005. Appellants submit Appellee's claim for breach of implied warranty is similarly barred by the applicable four-year statute of limitations, which begins to run from the date of delivery of the "defective product."

Appellants further argue Appellee cannot recover damages under a breach of warranty theory where Appellee did not give Appellants an opportunity to make all necessary repairs. Appellants maintain Appellee failed to report to Appellants numerous issues with the house between 2003 and 2005, and did not let Appellants review cost estimates or bid on the projects before Appellee hired his own contractors to make repairs. Appellants insist the "hindrance of performance" rule prohibits Appellee from

recovering under a breach of warranty theory for any alleged defects in the property which Appellee did not report to Appellants and/or for which Appellee did not give Appellants the chance to make repairs.[5]

In their sixth issue, Appellants argue the property sat in an allegedly defective condition from August 2005, when Appellee's civil engineering expert Mr. Honig first visited the property, until the fall of 2008, when the remediation began. Appellants also insist Mr. Honig did not inspect the property in the state it was in at the time of closing and saw the property only after Appellee had his own contractors make some repairs. Appellants claim Mr. Honig did not determine which damages resulted from the property in its original condition versus any damages Appellee sustained after his own contractors made modifications to the property. Appellants contend Appellee failed to report to Appellants all problems Appellee discovered with the home and failed to give Appellants the opportunity to make repairs before hiring his own contractors. Appellants emphasize that Appellee failed to mitigate his damages.

---

[5] Appellants also complain Appellee cannot recover on his breach of express warranty claim where he failed to present evidence at trial of the warranty standards referred to in paragraph 9 of the agreement of sale. Appellants cite no law to support this position, so this particular claim is waived. **See Lackner v. Glosser**, 892 A.2d 21 (Pa.Super. 2006) (explaining arguments which are not appropriately developed due to failure to cite any authority in support of contention are waived on appeal).

Additionally, Appellants maintain Appellee cannot recover punitive damages for any of breach of warranty claims. We resolve this particular claim in our discussion of Appellants' fourth issue on appeal.

In their seventh issue, Appellants argue Appellee did not assert a cause of action for breach of the agreement of sale. Appellants assert Appellee's sole contract claim against Appellants was for breach of express warranty. Appellants emphasize Appellee did not seek to amend the complaint to add a count for breach of the agreement of sale. Even if Appellee had sought leave to add a count for breach of the agreement of sale, Appellants contend that claim is barred by the applicable four-year statute of limitations where Appellee was aware of the alleged defects in the house in late 2000 and early 2001.

In their ninth issue, Appellants argue that all of Appellee's claims arose from the contractual relationship between the parties. Appellants assert delay damages are not recoverable in actions for breach of contract. Collectively, Appellants' third, sixth, seventh, and ninth issues conclude the court erred by granting Appellee relief on his various contract claims, and this Court must reverse the judgment in favor of Appellee. We cannot agree that relief is due on these claims.

Instantly, we have already decided Appellee's action sounded in tort, not in contract. Because the court entered a "general verdict" in favor of Appellee, and the record supports the court's judgment in favor of Appellee on his tort claims, we do not have to consider Appellants' contract challenges to Appellee's claims. **See Halper, supra**. Nothing in the record indicates that Appellants expressly asked the court for a special verdict sheet and the

court refused that request. *See id.* Thus, we give issues three, six, seven,[6] and nine[7] no further attention.

For purposes of disposition, we combine Appellants' fourth and fifth issues. In their fourth issue, Appellants argue Appellee's complaint improperly pled a count for punitive damages as an independent claim for relief. Appellants assert a claim of punitive damages does not constitute its own cause of action but is merely incidental to other causes of action. Appellants contend Appellee was not entitled to punitive damages for any of his tort claims because those claims fail as a matter of law for the reasons stated in Appellants' earlier arguments. Appellants insist punitive damages are also unrecoverable on Appellee's breach of warranty claims because the Uniform Commercial Code does not permit recovery for punitive damages and/or because the warranty claims are contract claims for which punitive

---

[6] Moreover, with respect to issue seven, nothing in the record supports Appellants' contention that the court granted Appellee relief for a claim of breach of the agreement of sale.

[7] Regarding issue nine, Appellants also suggest that even if Appellee can recover delay damages on his tort claims, Appellee is not entitled to delay damages for any time in which he caused delay. Appellants assert Appellee informed the court at a status conference on May 10, 2013, that he was in the process of mediating his claim with Hurd Millwork, and was involved in that process through at least the end of 2013. Appellants then baldly state Appellee's private mediation with Hurd Millwork lasted at least one year. Nevertheless, Appellants' sole citation to the record to support this claim is to their own memorandum of law in response to Appellee's motion for delay damages. Appellants do not cite to actual places in the record which indicate when, or for how long, Appellee delayed this case. Appellants similarly fail to provide this Court with a calculation for their requested remittitur. For these reasons, this particular claim is waived. *See Lackner, supra*.

- 27 -

damages are not available.[8]

In their fifth issue, Appellants argue that Appellee can assert a cause of action under the UTPCPL against only the seller of the property, Chadwell Associates, L.P. Appellants assert Appellee's UTPCPL claim is based on Appellants' allegedly fraudulent and/or deceptive conduct in failing to notify Appellee about Appellants' litigation with Hurd Millwork. Nevertheless, Appellants contend Appellee executed the agreement of sale on July 26, 1999, which was before the litigation with Hurd Millwork commenced. Appellants suggest the "fraudulent or deceptive conduct" upon which Appellee's UTPCPL claim is based could not have occurred in connection with the sale of Appellee's property when Appellants were not involved in litigation with Hurd Millwork at the time of the sale. Appellants conclude in issues four and five that Appellee was not entitled to an award of punitive damages for any of his claims, Appellee's UTPCPL claim fails as a matter of law, and this Court must reverse the judgment in favor of Appellee. We cannot agree that any relief is due on these issues.

"[P]unitive damages are an 'extreme remedy' available only in the most exceptional circumstances." ***Doe v. Wyoming Valley Health Care System, Inc.***, 987 A.2d 758, 768 (Pa.Super. 2009).

---

[8] Appellants cite no law to support their assertion that punitive damages are unrecoverable on Appellee's breach of warranty claims, which could constitute waiver of this particular argument. ***See id.*** Due to our disposition of this issue, however, we decline to find waiver.

> Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either the defendant's evil motive or his reckless indifference to the rights of others. A defendant acts recklessly when his conduct creates an unreasonable risk of physical harm to another and such risk is substantially greater than that which is necessary to make his conduct negligent. Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed. Rather, the plaintiff must adduce evidence which goes beyond a showing of negligence, evidence sufficient to establish that the defendant's acts amounted to intentional, willful, wanton or reckless conduct….

*Id.* In determining whether punitive damages are warranted, "we must analyze whether the complaint's allegations establish that the actor actually knew or had reason to know of facts which created a high risk of physical harm to plaintiff. Further, the defendant must have proceeded to act in conscious disregard of or indifference to that risk." *Field v. Philadelphia Elec. Co.*, 565 A.2d 1170, 1182 (Pa.Super. 1989). When a plaintiff seeks both compensatory and punitive damages, the "approved practice" is for the fact-finder to list the amount of the damages separately, so that an appellate court can review the appropriateness of one award without disturbing the other. *Golomb v. Korus*, 396 A.2d 430 (Pa.Super. 1978); *Bergen v. Lit Bros.*, 45 A.2d 373 (Pa.Super. 1946).

"The UTPCPL is Pennsylvania's consumer protection law and seeks to prevent unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *DeArmitt v. New York Life Ins. Co.*, 73 A.3d 578, 591 (Pa.Super. 2013). "The purpose of

the UTPCPL is to protect the public from unfair or deceptive business practices." *Id.* This Court has stated:

> The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of an unlawful method, act or practice. 73 P.S. § 201-9.2(a). Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. *Id.*

*Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 151 (Pa.Super. 2012). Further, the court may award costs and attorney's fees to a prevailing plaintiff in a UTPCPL action, in addition to other relief provided. 73 P.S. § 201-9.2(a).

Instantly, the record makes clear the court awarded Appellee only compensatory damages. At trial, Appellee presented evidence that his costs for remediation were $597,191.54. Appellee testified he actually expended a total of $826,695.99, which included additional costs associated with the remediation. The court awarded Appellee $500,000.00 in damages, evidencing only a compensatory damages award. The court's award of delay damages in the amount of $248,287.67, on the basic award of $500,000.00 in damages, confirms the court awarded only compensatory damages, as delay damages are not available for a punitive damages award.[9] *See* Pa.R.C.P. 238(a)(1-3) (stating that at request of plaintiff in civil action

---

[9] The court awarded Appellee $248,287.67 in delay damages based on the required Rule 238 calculation set forth in a chart Appellee submitted as part of his post-trial motion for delay damages.

seeking monetary relief for, *inter alia*, property damage, damages for delay shall be added to amount of compensatory damages awarded against each defendant found liable; delay damages shall be awarded for period of time from date one year after date original process was first served up to date of verdict; delay damages shall be calculated at rate equal to prime rate listed in first edition of Wall Street Journal published for each calendar year for which damages are awarded, plus one percent, not compounded); **Colodonato v. Consolidated Rail Corp.**, 504 Pa. 80, 470 A.2d 475 (1983) (explaining Rule 238 delay damages are, in essence, extension of compensatory damages necessary to make plaintiff whole; holding punitive damages must be excluded from computation of delay damages). Moreover, if the court had awarded punitive damages, then it would have entered a separate award. **See Golomb, supra**; **Bergen, supra**.

Likewise, nothing in the record indicates the court awarded damages under the UTPCPL. Significantly, the court's general award of damages did not mention double or treble damages, or costs or attorney's fees. **See** 73 P.S. § 201-9.2(a); **DeArmitt, supra**; **Bennett, supra**. Rather, the record confirms the court awarded only compensatory damages in an amount below what Appellee requested, and added delay damages calculated on that lower amount. There is simply no evidence on this record to support Appellants' claims that the court awarded punitive damages or granted Appellee relief on his UTPCPL count. Consequently, Appellants are not entitled to relief on

issues four or five.

In their eighth issue, Appellants argue that all of Appellee's alleged damages and claims stem from the defective windows manufactured by Hurd Millwork. Appellants admit that they stipulated the windows installed in Appellee's home were defective. Appellants assert that Appellee failed to present any evidence to distinguish the liability resulting from the defective windows and doors from the liability resulting from the work of Appellants themselves or contractors Appellants hired to work on the property. Appellants insist Hurd Millwork is responsible for the defects and damages at issue. Appellants conclude they are entitled to an award of indemnification against Hurd Millwork for any and all liability, and this Court must grant Appellants appropriate relief. We cannot agree that relief is due on this claim.

Instantly, Appellants filed a cross-claim in this matter alleging Hurd Millwork was solely or jointly liable for Appellee's injuries. Nevertheless, in the month before trial commenced, Appellants' counsel sent a letter to the trial court's administrative assistant expressly stating Appellants did not intend to present claims against any third parties at trial. (**See** Letter to Administrative Assistant to Honorable James F. Proud, dated 12/1/14, at 1; R.R. at 360a). At trial, Appellants presented no evidence to support their cross-claim and simply rested at the conclusion of Appellee's case. Appellants do not explain on appeal how they preserved their cross-claim in

light of these actions. Rather, the record shows Appellants effectively abandoned their cross-claim. Moreover, Appellants had already reached a settlement with Hurd Millwork in October 2002, ostensibly for damages involving the defective windows installed in Appellee's home. Appellants cannot recover twice for the same claim. ***See D'Adamo v. Erie Ins. Exchange***, 4 A.3d 1090 (Pa.Super. 2010) (explaining general rule of damages that party cannot recover twice for same injury; purpose of this rule of damages in any context is to avoid unjust enrichment). Based upon the foregoing, we conclude none of Appellants' claims on appeal merits relief. Accordingly, we affirm.

Judgment affirmed.

Judge Platt did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/21/2019*

- 33 -